Hillsborough
No. 7721

THE STATE OF NEW HAMPSHIRE

v.

JAMES H. BUTLER

October 31, 1977

*David H. Souter,* attorney general, and *Robert V. Johnson II,* assistant attorney general (*Mr. Johnson* orally), for the state.

*James E. Duggan,* of Manchester, public defender, by brief and orally, for the defendant.

GRIMES, J. The issues in this rape case are whether defendant's confession given after he had requested counsel should have been excluded, and whether the trial court erred in ruling that defendant opened the way for the admission of a previously excluded identification of the defendant by the complaining witness.

Defendant was indicted for rape, RSA 632:1 (Repl. 1974), and deviate sexual relations, RSA 632:2 (Repl. 1974), alleged to have been committed on July 1, 1975, in Greenville, New Hampshire. He moved to suppress certain statements made to the police and an identification made by the complaining witness through a one-way mirror while he was alone in a room at the police station. The court denied the motion regarding the confession but granted it as to the identification and ordered that no in-court identification could be made unless defendant during the course of the trial did something to open the door for it. During the trial the court ruled that defendant had opened the door. Defendant was convicted and his exceptions to the rulings of the court were transferred by *Loughlin,* J.

The complainant testified that she had spent the day with her boyfriend who worked as a night watchman. She ate dinner with her parents and then went for a bicycle ride. She turned into a picnic area intending to drink out of her canteen but observed a man standing beside a parked automobile. She did not like his looks so she kept going intending to leave the area by another exit. The man started his car and pulled in front of her knocking her

off her bicycle. He then took her into the woods and raped her after putting his face in her vaginal area. The police, alerted by a passerby, came to the scene after the man had left, and complainant gave them a description of the man who had raped her. She described him by height, weight, hair color, etc., and told them he had large bulging eyes. She also described his automobile as being a Plymouth Gold Duster with large lettering on the back which was scratched.

The following day at about 2:45 p.m., a Greenville police officer stopped a Gold Duster being driven by a man meeting the description given by the complainant. This man was the defendant. He was asked to drive to the police station and he complied. He was given the *Miranda* warnings by the chief of police. It is not clear that he expressly waived his rights at that time. *See Miranda v. Arizona*, 384 U.S. 436 (1966). As we will show later, however, this is not fatal in this case.

After being given the *Miranda* warnings, defendant was questioned about his activities the night before. After a time defendant asked why he was being questioned and when he was told he declined to answer more questions and asked to talk with a lawyer. He was allowed to use the telephone and called his mother who said she would obtain a lawyer.

At about 4:20 p.m., complainant was brought to the police station. She identified defendant's automobile as being the one her assailant had used. She was then taken to a one-way mirror where she observed defendant sitting alone. She identified him as being her assailant.

Defendant was placed under arrest, finger-printed, and photographed. His bail was set at $1,000 on personal bond. At some point about 7:00 p.m., a lawyer talked by telephone to the chief of police regarding the defendant, but no lawyer came to visit defendant at the station.

At about 7:15 p.m., defendant stated that he wished to make a statement. He was brought to the chief's office where he was again warned of his constitutional rights, and he initialed each warning on a form including a waiver of those rights. He then wrote out a statement in his own hand in which he confessed to the rape.

■ We find no error in the denial of the motion to suppress the confession. Although defendant had indicated that he did not want to be questioned further and that he wished to talk with a

lawyer, it was findable that questioning in fact ceased in accordance with the dictates of *Miranda* and that there was no further questioning. Although he had asserted his right to have a lawyer, he was entitled to change his mind and to waive that right provided he did so voluntarily. The evidence supports a finding that the waiver of that right was voluntary, and, unlike the case of *Brewer v. Williams,* 430 U.S. 387 (1977), there had been no violation of that right by questioning prior to the waiver which induced the defendant to talk.

■  Although, as we before stated, the record does not show that he expressly waived his rights at the time of the first *Miranda* warnings, no incriminating evidence which was subject to objection was obtained during the period prior to the express waiver after the second *Miranda* warning. We remind the police and prosecutors, however, that whatever may be the future interpretation of *Miranda,* that the decision in that case requires not only an understanding of the warnings but also an express waiver of the rights involved. 384 U.S. at 475. Strict compliance by the police will avoid the danger that statements, otherwise admissible, will have to be excluded. *Miranda* cards not providing for express waivers should be revised.

The trial court granted defendant's motion to suppress the out-of-court identification and also any in-court identification by the complainant. Defense counsel was "put on notice, that if . . . either by innuendo or by direct confrontation" the complainant is asked if she can identify defendant, he might open the door.

■  The exclusion of the out-of-court identification by complainant through the one-way mirror, while defendant was alone, was of course proper. *See Gilbert v. California,* 388 U.S. 263 (1967); *Kirby v. Illinois,* 406 U.S. 682 (1972); *State v. Carmody,* 112 N.H. 179, 291 A.2d 610 (1972). It is discouraging to find that such improper practices still exist in spite of extensive police training. The state does not question the exclusion of any in-court identification although it does not appear that any issue was raised as to her ability to make such an identification independent of the out-of-court identification. *See United States v. Wade,* 388 U.S. 218, 239–43; *State v. Carmody supra.* The question presented is whether the court erred in ruling that defense counsel had "opened the door."

During cross-examination of the complainant, she admitted that in her description of her assailant to the police she had not said that the man had a mustache. Counsel had a photograph marked for identification and then asked her if the man in the picture had a mustache and she said that he did. The court then ruled that because of the inference left with the jury that the state should have a chance to rebut it. The state's attorney then asked complainant if the man in the picture was the one who assaulted her and she said that he was.

Although it was important that the defense be able to show that defendant had a mustache on the day of the assault in view of complainant's failure to mention that he had one, this could have been done, as the trial court pointed out, by the testimony of other witnesses. On the other hand, defense counsel pointed out to the court that he asked the complainant the question so as to establish the fact that she considered the facial hair in the photograph to be a mustache. This, of course, would be important to prevent a later claim by complainant that she did not consider the facial hair to be a mustache. At the time complainant identified the man in the picture as her assailant, it does not appear that the jury had yet been made aware of the fact that the photograph was of the defendant. Defendant himself later identified the photograph as being of him depicting how he looked on July 2, 1975, and stated that he had a mustache on that day. The record does not show complainant was ever asked by the prosecution to directly identify defendant in the courtroom.

■ The transcript of these events leaves it unclear as to the exact situation with regard to the jury's knowledge of who was depicted in the photograph at the time complainant was asked if the man in the picture had a mustache. The trial court observed the proceedings and concluded that the circumstances were such that the question by defense counsel and his answer left the inference that she could not identify defendant as her assailant. We cannot conclude from the record before us that this conclusion was unwarranted. This inference coupled with the prior ruling prohibiting her from making an identification could be found to put the prosecution in an impossible position, and we cannot say that the trial judge's ruling constituted an abuse of discretion.

■ Defendant argues further that the trial court erred in instructing the jury that the state had the burden of proving the

voluntariness of the confession by clear and convincing proof instead of beyond a reasonable *doubt* in accordance with *State v. Phinney*, 117 N.H. 145, 370 A.2d 1153 (1977), which he claims should be made retroactive. We have no occasion to pass upon the issue of retroactivity as the record shows that defendant's trial counsel not only failed to raise any objection to the instruction but in fact expressly agreed to it. Defendant is in no position now to raise the issue here.

*Exceptions overruled.*

All concurred.