Rockingham
No. 79-052

## The State of New Hampshire

v.

## Douglas A. Nash

October 12, 1979

*Thomas D. Rath*, attorney general (*Richard B. McNamara*, assistant attorney general, orally), for the State.

*John A. Macoul*, of Salem, for the defendant.

DOUGLAS, J.   The defendant appeals from a jury verdict in Rockingham County Superior Court in which he was found guilty of violating RSA 632-A:2, prohibiting aggravated felonious sexual assault. Exceptions taken during a pretrial hearing on the defendant's motion to suppress and during the course of trial were reserved and transferred to this court by *Contas*, J. We reverse the order denying the motion to suppress certain statements made by defendant, and therefore we do not consider those exceptions to rulings made by the court at trial.

The issue presented is whether the defendant's constitutional rights were violated by the interrogating officer's failure to cease questioning after the defendant requested an attorney.

The defendant, a twenty-one-year-old man, was arrested in El Paso, Texas, in November 1977, because of charges arising out of an indictment against him in New Hampshire for rape. On November 15, 1977, Rockingham County Deputy Sheriff Cook arrived at the El Paso county jail and after awakening defendant at 1 a.m. took him into custody. The defendant was taken to the El Paso airport and boarded a flight to Boston. During the plane ride he ate and, according to Cook, slept.

Upon arrival at Logan Airport, Cook drove the defendant to the Portsmouth Police Department. They arrived at the police station at about 2:00 p.m., and the defendant was taken into the interrogation room.

Three police officers took part in the interrogation. Initially, Detective Hinton and Detective Sergeant Krook were present. Hinton advised the defendant of his rights, reading from a prepared form, and also had the defendant read the form. Although the defendant refused to sign the form, stating that an attorney had once told him never to sign anything, he did indicate that he understood his rights.

During the first part of the interrogation the defendant denied any involvement in the rape, but admitted knowing the victim and her boyfriend. Shortly after 3:00 p.m., the defendant stated that he was hungry and he was given food. Captain Mortimer entered the room at about 4:00 p.m. and asked the defendant if he had been advised of his rights and if he understood them, to which the defendant responded affirmatively.

Mortimer spoke with the defendant until shortly before 5:00 p.m., telling him about the evidence that the police had accumulated. The

defendant then stated that "he thought he had better talk to an attorney." Mortimer testified that he told defendant he could use the phone, "but I can tell you what a lawyer would tell you, and I'll tell you the same thing. Just don't say a word, keep your mouth shut."

Defendant testified that Mortimer added, "That isn't the right thing for you to do, because you are very sick, young man. You are sick. You are never going to get help by yourself, unless you talk to me now." Defendant further testified that Mortimer continued to question him. Mortimer admitted that he told defendant he needed help and that defendant asked him "Could you get me help?" and that Mortimer's response was that the defendant could be helped in the prison or the hospital. Defendant further testified that Mortimer kept pressing him to admit the rape saying he was sick and never going to get help, and that they, the police, were the only ones who could help and that there was no use getting an attorney. There was no express denial of this by Mortimer on the record. The interrogation terminated and the defendant was taken to a cell at about 6:00 p.m.

The defendant raises two arguments in support of his contention that, once he asserted his right to counsel, interrogation should have terminated until an attorney was present or a valid waiver of the right to counsel was obtained. He first argues that when a suspect requests an attorney during the course of in-custody interrogation, State and federal constitutional rights against self-incrimination require not only that any subsequent confession be shown to be voluntary, but also that the subsidiary procedural rights outlined in *Miranda v. Arizona*, 384 U.S. 436 (1966), be followed. He also argues that the sixth amendment right to counsel attaches at a post-indictment interrogation and is violated unless the State can establish that an attorney was provided or that the suspect waived his sixth amendment right. *Brewer v. Williams*, 430 U.S. 387 (1977). Our holding on the self-incrimination issues makes it unnecessary to address the defendant's sixth amendment argument. We note in passing that all questioning took place *after* defendant was indicted and therefore there is serious question whether any of it was permissible in the absence of counsel under *Massiah v. United States*, 377 U.S. 201 (1963).

Both the United States Constitution and the New Hampshire Constitution protect a defendant against involuntary self-incrimination. "No person ... shall be compelled in any criminal case to be a witness against himself . . . ." U.S. CONST. amend. V; "No subject shall . . . be compelled to accuse or furnish evidence against himself." N.H. CONST. pt. I, art. 15. These provisions guarantee a defendant procedural protections, such as warnings and the

requirement of a waiver, which safeguard the underlying State and federal rights of freedom from self-incrimination.

*Miranda v. Arizona* is the seminal case outlining the procedural protections granted under the State and Federal Constitutions. In that case the Supreme Court established two levels of safeguards: the first level relates to the warnings that must be given and waiver that must be obtained before interrogation commences; the second level relates to the protections granted once the defendant asserts his right to silence or to counsel during the interrogation.

■ Under *Miranda*, "[i]f the individual states that he wants an attorney, the interrogation *must cease until an attorney is present.*" *Miranda v. Arizona*, 384 U.S. at 474 (emphasis added). The suspect's request for counsel was made a per se invocation of his right to freedom from self-incrimination because of "the unique role the lawyer plays in the adversarial system of criminal justice in this country." *Fare v. Michael C.*, 99 S. Ct. 2560, 2569 (1979). Although *Miranda's* language would seem to impose an absolute bar to any further communication between the police and the suspect until the suspect talks with an attorney, and has been so construed by some courts, *see People v. Grant*, 45 N.Y.2d 366, 375 n.1, 380 N.E.2d 257, 262 n.1, 408 N.Y.S.2d 429, 434 n.1 (1978), and cases collected therein, other courts have allowed continued interrogation under circumstances showing a knowing and intelligent waiver. *Id.*; *see United States v. Charlton*, 565 F.2d 86 (6th Cir. 1977), *cert. denied.* 434 U.S. 1070 (1978). We follow the reasoning of the latter cases, allowing a defendant to waive his right to counsel after he has asserted it. *State v. Butler*, 117 N.H. 888, 379 A.2d 827 (1977).

■ In the present case, the defendant's statement that "he thought he had better talk to an attorney" is sufficient to assert his rights under *Miranda*. *Accord, Ochoa v. State*, 573 S.W.2d 796 (Tex. Crim. App. 1978) (defendant's indication in any manner that he wished to have a lawyer is sufficient to assert right). Therefore, his subsequent confession will be admissible only if the State can establish that the defendant later waived his right to counsel. *State v. Butler*, 117 N.H. 888, 379 A.2d 827 (1977).

■■ To prove a constitutionally effective waiver, the State must first show that the suspect's right to terminate questioning by requesting counsel was "scrupulously honored." *People v. Grant supra.* Failure to meet this standard will cause the confession to be inadmissible. *Cf. Commonwealth v. Watkins*, 379 N.E.2d 1040 (Mass. 1978) (applying the "scrupulously honored" standard to request for

counsel and finding confession admissible where questioning ceased, defendant was given opportunity to call counsel, and renewed questioning was initiated by defendant). Second, the State must show that the suspect waived the right once it was asserted. The courts apply the traditional standard in determining whether there was a waiver: "It must be shown that there was an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), cited in *United States v. Charlton*, 565 F.2d at 91. Because we find that the State has failed to meet the burden of establishing a valid waiver, we hold that the defendant's confession is inadmissible.

Under *Miranda v. Arizona*, 384 U.S. at 486 n.55, the State's burden of establishing a constitutionally effective waiver is difficult to sustain when the record shows that a request for counsel was not honored before questioning continued. *North Carolina v. Butler*, 99 S. Ct. 1755 (1979); *Canal Zone v. Gomez*, 566 F.2d 1289 (5th Cir. 1978); *cf. Maglio v. Jago*, 580 F.2d 202 (6th Cir. 1978) (refusing to find waiver of sixth amendment right to counsel under heightened burden of request for counsel that was not honored). Because of the importance of the right to freedom from self-incrimination, we have read *Miranda* as requiring an express waiver, either oral or written, *State v. Butler*, 117 N.H. at 891, 379 A.2d at 829, thereby avoiding the difficulties inherent in implying a waiver.

The Supreme Court has recently rejected the proposition that *Miranda* requires an express written or oral waiver of those rights arising at the beginning of an interrogation, requiring instead that the question of waiver be determined on the totality of the circumstances surrounding the interrogation. *North Carolina v. Butler*, 99 S. Ct. 1755 (1979); *see State v. Noel*, 119 N.H. 522, 404 A.2d 290 (1979). In the *North Carolina* case there was no request for counsel and it therefore involved only the first level of *Miranda*, which requires that warnings be given and a waiver obtained *before* questioning commences, and therefore does not govern this case. Here our inquiry focuses on the second level, which relates to procedures to be followed after a suspect has expressly asserted his right to silence or to counsel. *See People v. Grant*, 45 N.Y.2d 366, 380 N.E.2d 257, 408 N.Y.S.2d 429 (1978).

Not only is assertion of any right generally treated to more stringent judicial scrutiny than first level warnings, but even stricter standards adhere when there is an assertion of the right to counsel.

> For this reason the court fashioned in *Miranda* the rigid
> rule that an accused's request for an attorney is *per se* an

invocation of his Fifth Amendment rights, requiring that all interrogation cease. *Fare v. Michael C.*, 99 S. Ct. 2560, 2569 (1979).

We hold that the State constitutional protections that support the right to freedom from self-incrimination include the requirement that a voluntary oral or written express waiver (not induced by further interrogation) be obtained once the right to counsel is asserted. There was no express oral or written waiver in this case.

We further hold on the record before us that it could not be found beyond a reasonable doubt that the admissions in this case were voluntary. *State v. Phinney*, 117 N.H. 145, 370 A.2d 1153 (1977). Considering Mortimer's and defendant's testimony regarding the circumstances under which the statements were made, it could not be found beyond a reasonable doubt that defendant was not induced to talk, after he had requested an attorney, by statements of Mortimer regarding what a lawyer would tell him and that he was sick and needed help that the police could provide. Statements so induced are, and have been, inadmissible as involuntary since the earliest times. *State v. Howard*, 17 N.H. 171 (1845). The statements, therefore, cannot be used for any purpose. *Mincey v. Arizona*, 434 U.S. 1343 (1978).

The defendant's exception to the trial court's ruling on the motion to suppress is sustained. Case remanded for retrial.

*Exception sustained; remanded.*

All concurred.