Cheshire
No. 82-476

THE STATE OF NEW HAMPSHIRE

v.

DONALDSON TAPPLY, JR.

December 27, 1983

*Gregory H. Smith*, attorney general (*Brian T. Tucker* and *Peter W. Mosseau*, assistant attorneys general, on the brief, and *Donald J. Perrault* and *Mr. Mosseau* orally), for the State.

*Edward J. Burke* and *William H. Kennedy*, of Keene (*Mr. Burke* and *Mr. Kennedy* on the brief, and *Mr. Burke* orally), for the defendant.

PER CURIAM. The issue presented in this interlocutory appeal from a superior court ruling in a second-degree murder case is whether certain inculpatory statements made by the defendant in response to police questioning should be suppressed because they were obtained in violation of the defendant's constitutional rights. We hold that the statements must be suppressed, and therefore reverse.

The defendant attacks the admission of the statements on the basis both of the Constitution of the United States and of the Constitution of this State. U.S. CONST. amends. IV, V, VI; N.H. CONST. pt. I, arts. 15 and 19.

█ In such situations, we first look to our own constitution, using its history, our precedents and such reasoning as we find persuasive in decisions of the United States Supreme Court and of other courts. We then look to the Federal Constitution to see whether our decision offends its provisions. *See* Linde, *First Things First: Rediscovering the States' Bills of Rights*, 9 U. BALT. L. REV. 379 (1980); *Developments in the Law—The Interpretation of State Constitutional Rights*, 95 HARV. L. REV. 1324 (1982). We find that our conclusions based on our own constitution offend none of the provisions of the Constitution of the United States; and although we refer to federal cases, it is only for guidance and not because they are controlling authority. *State v. Ball*, 124 N.H. 226, 233, 471 A.2d 347, 351 (1983); *see Michigan v. Long*, 103 S. Ct. 3469, 3476 (1983).

The defendant was indicted for second-degree murder for causing the death of Michael Estes recklessly under circumstances manifesting an extreme indifference to the value of human life. RSA 630:1-b, I(b). He moved to suppress certain statements made in response to police questioning. After a hearing, *Dalianis*, J., denied the motion as to some statements, but granted it as to others. Because the court recognized that there was a substantial basis for a difference of opinion, the question of the correctness of the rulings was transferred in advance of trial. The specific questions transferred ask whether the defendant had, halfway through the questioning, effectively asserted his right to counsel after having been given the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966), at

the start of the questioning. In this court, however, the inquiry was expanded to consider other alleged grounds for suppression.

Michael Estes, age nineteen months, was found by the defendant at about 2:00 a.m., on February 6, 1982, in the partially-filled bathtub of his mobile home in Troy, where the defendant was living with the child's mother, Cindi, who was at work. Although the defendant made attempts to revive the child and called on a neighbor for help, the child was in fact dead. That night, a corporal of the New Hampshire State Police (corporal) and an officer of the Troy Police Department, in the process of investigating the death, went to the defendant's home. After about fifteen minutes, the defendant went with them to the Troy police station where he was interviewed on tape beginning about 9:30 p.m. and ending at about 10:30 p.m. He was then taken home. No *Miranda* warnings were given. The trial court, however, found that the defendant consented to accompany the officers to the station, and that he was not in custody so as to require warnings; and this finding was supported by the evidence.

The corporal continued his investigation and formed the opinion, which he expressed to the county attorney and some fellow officers, that the defendant had in fact killed the Estes boy and would confess to him that night, February 8, 1982.

At about 7:30 on the night of February 8, the corporal, a police officer, and a deputy sheriff arrived at the defendant's home to pick him up and bring him to Keene for further questioning. The defendant went with the officers to the New Hampshire State Police troop station in Keene, about ten miles away, where he was taken to a room and given the *Miranda* warnings, which he said he understood.

■■ The defendant, however, was not asked whether he waived his rights, nor did he expressly waive them. The State therefore, even under *North Carolina v. Butler*, 441 U.S. 369 (1979), bears a heavy burden to show a knowing and intelligent waiver. *See Tague v. Louisiana*, 444 U.S. 469 (1980) (waiver not shown). We have said that a waiver must be shown beyond a reasonable doubt. *State v. Goddard*, 122 N.H. 471, 473, 446 A.2d 456, 457 (1982). The questioning began at 8:36 and ended at 11:14 that night, during which the defendant was under intensive and very skillful questioning. It was not until more than halfway through the questioning, after being led into a discussion of child discipline and suggestions as to what had happened, that the defendant made incriminating statements after the following exchange:

"Defendant: Should I have my lawyer . . . .

Corporal: Tap, let me tell you something . . . .

| | |
|---|---|
| Sheriff: | I know you didn't do it on purpose. |
| Corporal: | We're not out here to hang you Tap, we have to get the truth. |
| Defendant: | Cindi is going to kill me. |
| Corporal: | No, she's not going to kill you. |
| Sheriff: | It was an accident, wasn't it? |
| Defendant: | It was an accident. I sat him in the tub . . . ." |

The fact that the incriminating statements came only after a long period of skillful interrogation in a police-dominated atmosphere militates against a finding that the defendant had waived either his right to silence or his right to a lawyer, even under federal constitutional standards. *See Tague v. Louisiana,* 444 U.S. at 470–71. We need not decide this question because we conclude that the statements of February 8 were inadmissible on two other separate grounds.

 This case, however, illustrates the danger of relying on an implied waiver, as we warned in *State v. Butler,* 117 N.H. 888, 891, 379 A.2d 827, 829 (1977). We believe that it is in the best interest of law enforcement that law enforcement officers have clearer guidelines regarding the assertion of the right to counsel after *Miranda* warnings are required and have been given. We conclude that this defendant effectively asserted his right to counsel and that the rigid rule that all questioning must then cease was violated.

The first reference to counsel by the defendant already appears above. Directly thereafter, the defendant made incriminating statements. The corporal told him not to worry about being "put away" and then asked the defendant to tell exactly what happened. The following exchange occurred under questioning by the deputy sheriff:

| | |
|---|---|
| "Defendant: | Do I need a lawyer for this before I . . . . |
| Sheriff: | That's entirely up to you, you've already confessed to us as to what happened. We just want to get this thing straightened out. . . . |
| Defendant: | In other words, I've already screwed myself. . . . |
| Sheriff: | Not screwed yourself up, you want to get the slate clean, you want to have a clear conscience, don't you? We know you didn't plan out, plan to murder this boy, we know |

the circumstances, we know it was an accident, we know you tried to revive him. . . .

Defendant: I loved Michael.

Sheriff: I'm sure you did.

. . . .

Sheriff: Can I explain something to you, Tap?

Defendant: Yes.

Sheriff: There is a difference between premeditated murder and an accident. Yes, you're responsible, right?

Defendant: I am responsible. If it comes to this that I, like he says, if I have to live with this for the rest of my life. . . ."

After further prodding to get it off his chest, the defendant made further incriminating statements regarding the "accident."

The defendant had been told he was not under arrest; but he was nevertheless in custody, for purposes of *Miranda* as found by the trial court, and he had been seized, for article 19 and fourth amendment purposes. Indeed, his being told he was not under arrest created an even greater need for legal advice because at no time before his incriminating statements and his reference to a lawyer had anyone even suggested that anything more than an accident was involved; yet the entire focus of the questioning was *not* to obtain information, but to get him to incriminate himself.

It is against this background that we consider whether the defendant asserted his right to counsel on the two occasions referred to above. When the defendant said: "Should I have a lawyer . . .", the immediate responses were: "I know you didn't do it on purpose," and "We're not out here to hang you. . . ." This was clearly a clever ploy to throw the defendant off his guard, to play down the seriousness of the situation and to induce him not to insist on a lawyer. When the defendant shortly thereafter said: "Do I need a lawyer for this before I . . .", he was again discouraged from insisting on one.

■ Whatever may be the protections afforded the citizen under the Federal Constitution, article 15 of our Bill of Rights requires fairer treatment with regard to the right to counsel than was shown here. We hold that, on both occasions, the defendant indicated his lack of understanding of the seriousness of his situation and sufficiently indicated that he was seeking the advice of a lawyer. *See State v. Nash*, 119 N.H. 728, 731, 407 A.2d 365, 367. The responses of the officers on each occasion indicate that both of them recognized

this. Instead of diverting his attention from it, as was done on the first occasion, or in effect telling him it was useless, on the second occasion, the officers had the duty to honor his right.

■■ Whenever a suspect indicates by any means or in any manner that he seeks the assistance of counsel, law enforcement officers have a duty to see to it that an opportunity to consult with counsel is provided before further questioning. *Miranda v. Arizona*, 384 U.S. at 444–45; *State v. Nash*, 119 N.H. at 731, 407 A.2d at 367. This right to counsel is a fundamental one which transcends the enforcement of the criminal law and should be liberally observed by those who have sworn to uphold the constitution, and no effort should be made to discourage the exercise of the right by our citizens.

■ We must be ever mindful that the prime obligation of government is to observe those rights embodied in our Bill of Rights which is "a most important part" of our State Constitution. *Gould v. Raymond*, 59 N.H. 260, 275 (1879) (quoting 9 N.H. STATE PAPERS 881).

Unlike the federal Bill of Rights which, at the insistence of the States, was added after the adoption of the original constitution granting power to the new government, the Bill of Rights in our State Constitution comes first, before any grant of power.

> "The reservation precedes the grant. Before they create the power of proportional taxation . . . and the supreme legislative power . . . and before they form themselves into a state . . . they lay the foundation, and therein reserve those personal liberties, which, upon the evidence of history and their own experience, they think cannot safely be surrendered to government."

*State v. Express Co.*, 60 N.H. 219, 250 (1880).

■ Because neither the government nor any of its agents had any power to violate or infringe upon these rights, any such violation or infringement is a nullity and the statements obtained in violation of those rights cannot be used in evidence. In the observance of these rights, the officers involved in this case did not deport themselves well.

In his brief, the defendant argues that his detention on February 8, 1982, was illegal, thus rendering the entire interrogation on that date inadmissible. Although the illegality of the detention was not one of the questions transferred by the trial court, it is an issue which is likely to be raised at trial. Because the record before us is

sufficient for a fair and thorough examination of this issue, we address it now in the interests of judicial economy.

 It is clear that the entire interview of February 8, 1982, must be excluded because of a violation of the defendant's rights under New Hampshire Constitution, part I, article 19, relating to searches and seizures. On February 8 at the State Police troop station in Keene, the defendant, even though he was told he was not arrested, was in custody, and the trial court so found. It is also clear that the police were not in possession of facts which would establish probable cause for his arrest or detention at the police station. The corporal himself testified that at that time they had no information to indicate that the defendant had anything to do with the boy's death. Even assuming that there were sufficient facts to warrant a brief detention at the defendant's home under *Terry v. Ohio*, 392 U.S. 1 (1968), of which we find no evidence, this would not authorize the police to take him to the station for interrogation. *Dunaway v. New York*, 442 U.S. 200, 216 (1979); *see State v. White*, 119 N.H. 567, 571, 406 A.2d 291, 294 (1979); *see also Florida v. Royer*, 103 S. Ct. 1319, 1328 (1983).

 Because of his illegal detention, any statements made by him during such period must be excluded unless the State shows that there has been a sufficient attenuation of the original taint to remove the causal connection between the illegal custody and the statements. *Brown v. Illinois*, 422 U.S. 590, 602 (1975); *accord Taylor v. Alabama*, 457 U.S. 687, 690 (1982). Factors to be considered are whether the *Miranda* warnings were given, the "[t]emporal proximity of the arrest and the confession, the presence of intervening circumstances, [citation omitted] and, particularly, the purpose and flagrancy of the official misconduct." *Brown v. Illinois*, 422 U.S. at 603–04.

 None of those factors comes near to removing the taint in this case. The time was far less than the six hours in *Taylor v. Alabama*, and there were no intervening circumstances in the instant case, such as those which existed in *Taylor*. The purpose of the detention in this case clearly was to wring a confession from the defendant by officers who knew that otherwise they had no facts to support an arrest. The corporal had told the county attorney and some fellow officers that afternoon that he believed that the defendant would confess to him that night. Therefore, regardless of the *Miranda* warnings, even if there were a valid waiver, the article 19 and fourth amendment violations stand as a bar to the use of the February 8 statements. *Brown v. Illinois*, 422 U.S. at 601–02; *see State v. White*, 119 N.H. at 571, 406 A.2d at 293.

 Although not one of the questions transferred, we note that a motion to suppress evidence obtained from the defendant's home was denied on the basis that, although his consent was invalid, a search warrant was properly issued on the basis of information gained in the questioning of February 8. Because the information relied upon should have been suppressed, we remand this issue to the trial court for reconsideration. *See Commonwealth v. White*, 374 Mass. 132, 371 N.E.2d 777 (1977), *aff'd by an equally divided court sub nom. Massachusetts v. White*, 439 U.S. 280 (1978), *reh'g denied*, 439 U.S. 1136 (1979).

*Reversed and remanded.*

SOUTER, J., did not sit.