(No. 58422.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. STEVEN SMITH, Appellant.

*Opinion filed June 29, 1984.*

366

SIMON, GOLDENHERSH and MORAN, JJ., dissenting.

Daniel D. Yuhas, Deputy Defender, and Jonathan Haile, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Mark L. Rotert and Jack Donatelli, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE CLARK delivered the opinion of the court:

This appeal requires us to determine whether the defendant was deprived of his right to counsel pursuant to the sixth amendment to the United States Constitution (U.S. Const., amend. VI). More specifically, we are asked to determine whether the defendant's confession should have been suppressed because he invoked his right to counsel before his confession was made. We are also asked to determine whether the defendant's conviction must be reversed because it is allegedly founded on

hearsay statements of Terry Logan and Greg Williams which identified Steven Smith as the perpetrator. These statements were admitted as evidence and argued to the jury by the State's Attorney.

The defendant, Steven Smith, was arrested on November 30, 1981, and charged with the armed robbery of a McDonald's restaurant in Lincoln, Illinois. A Logan County jury found Smith guilty as charged, and Smith was sentenced to nine years in prison on April 20, 1982. A divided appellate court affirmed the defendant's conviction (113 Ill. App. 3d 305), and we granted defendant's petition for leave to appeal (87 Ill. 2d R. 315(a)). We now affirm the appellate court.

A reading of the testimony reveals the following facts. Shortly before 4 a.m. on November 19, 1981, Terry Logan and Greg Williams arrived at the McDonald's restaurant in Lincoln. Logan and Williams normally arrived for work at this early hour to prepare the restaurant for business. Logan and Williams entered the restaurant and were confronted by an armed male who wore a ski mask and brandished a large revolver. The armed man was standing inside the restaurant when Logan and Williams entered. He remained silent, and he used gestures to direct Logan to bind Williams' hands, feet and mouth with tape. He then forced Logan to bind his (Logan's) mouth shut with the tape, and the three men waited in silence for the arrival of another worker. Logan and Williams did not have the keys to open the store safe.

Karen Vale, another McDonald's employee, entered the restaurant and found Logan and Williams sitting on the floor near the safe. The masked man was standing near Logan and Williams. Vale was directed to open the safe, and approximately $2,600 was placed in a shake-mix box. Logan was ordered to tape Vale's hands together. The tape and store telephone were placed in the

shake-mix box, and Logan was directed to take the shake-mix box to his car in the parking lot.

Logan and the intruder walked to the parking lot, and he directed Logan to enter the car and drive the two men to a deserted area near Lincoln. Logan testified that the intruder then spoke for the first time, saying: "If you say anything to anyone, I will kill you. I will leave you $200 for your trouble. McDonald's is stupid." He left the $200, which was later recovered by the police. When they stopped at the designated area, he exited the vehicle, pulled Logan out of the car, and hit him in the forehead. Logan woke up later in the back seat of the car with his hands taped behind his back. None of the three initially identified the robber, but subsequently Logan identified the defendant, Steven Smith, whom Logan had known prior to the robbery, as the perpetrator. Williams also told the police that the robber reminded him of his cousin, Steven Smith.

Steven Smith was arrested on November 30, 1981, and taken to the police station. Smith was questioned by Detective Coombs and Detective Vonderahe. The tape transcript was admitted into evidence over the objection of Smith's attorney, and it included a passage at the beginning of the tape:

"Q. Steve, I want to talk with you in reference to the armed robbery that took place at McDonald's Restaurant on the morning of the 19th. Are you familiar with this?

A. Yeah. My cousin Greg was.

Q. Okay. But before I do that I must advise you of your rights. Okay? You have a right to remain silent. You do not have to talk to me unless you want to do so. Do you understand that?

A. Uh. She told me to get my lawyer. She said you guys would railroad me. [The court reporter recorded the name as 'Chico' rather than 'she' when the tape was played to the jury. The transcript of the interrogation that was admitted into evidence referred to 'she.' The ap-

parent discrepancy in names has not been discussed by the litigants, and is not germane to the resolution of this appeal.]

Q. Do you understand that as I gave it to you, Steve?

A. Yeah.

Q. If you do want to talk to me I must advise you that whatever you say can and will be used against you in court. Do you understand that?

A. Yeah.

Q. You have a right to consult with a lawyer and to have a lawyer present with you when you're being questioned. Do you understand that?

A. *Uh, yeah. I'd like to do that.*

Q. Okay. If you want a lawyer and you're unable to pay for one a lawyer will be appointed to represent you free of cost, do you understand that?

A. Okay.

Q. Do you wish to talk to me at this time without a lawyer being present?

A. *Yeah and no, uh, I don't know what's what, really.*

Q. *Well. You either have to talk to me this time without a lawyer being present* and if you do agree to talk with me without a lawyer being present you can stop at any time you want to.

A. All right. I'll talk to you then.

\* \* \*

Q. Now, this is not game time, Steve. Games are over . . . You're eighteen years old and that's a hell of a way to start your life, my friend. Now I know that you done the McDonald's job.

A. No. I didn't.

Q. Now if you done it with somebody else, that's fine.

A. I didn't do the McDonald's job.'' (Emphasis added.)

Smith admitted more knowledge of the crime, and finally confessed:

"A. All right. I—all right. I committed it. I knew

about the robbery. I knew about it long before it happened."

After this outburst, Smith returned to his earlier story, and insisted that he knew about plans to rob the restaurant, but did not commit the crime himself. The interview concluded at 9:10 p.m.:

"Q. You're puttin[g] your mother through hell. She just went through hell out there when we found all that s---. Your dad is quite upset.

A. I don't want to talk to you no more. I wanta get a lawyer. I ain't got no where to go. You guys have got all this evidence and all I got is three people. So what. That's gonna do me a lot of f----- good."

Logan's out-of-court identifications were presented to the jury as substantive evidence and received by the jury as substantive evidence. The transcript was also admitted into evidence, and the prosecutor referred to it throughout the trial and in his closing statement. On the day of the trial, prior to calling Logan and Williams as witnesses, the State's Attorney moved to have them declared hostile witnesses. In support of his motion, the State's Attorney noted the vacillation in Logan's pretrial statements. The trial court declared both Logan and Williams to be hostile witnesses.

At trial, Logan gave the following testimony:

"Q. And you told me, did you not, that the person who committed that armed robbery and who you saw in that car with a gun who pulled off the mask was, in fact, Steve Smith?

A. Yes, I said that.

* * *

Q. Didn't you tell me on November 19, 1981, that the armed robber, Steve Smith, gave you money in that car after the armed robbery was completed?

A. Yes.

Q. How much did you get?

A. $200.

Q. And it is that money that Steve Smith gave you to be silent and not give away his identity. Isn't that not correct?

A. It was not Steve Smith."

Williams was also called to the witness stand and he gave the following testimony:

"Q. Did this—Did this armed robber remind you of anybody?

A. No, he did not.

Q. Do you remember being interviewed by Detective Vonderahe at the Lincoln Police Department on Tuesday, December 1, 1981, at about 11:56 a.m.?

A. Yes.

Q. Do you remember Detective Vonderahe asking you then who did he remind you of and your answering, he reminded me of my cousin?

A. I think I remember that now."

The defendant argues that the trial court erred when it ruled that Logan and Williams were hostile witnesses, but we agree with the appellate court's reasoning on this point. Any error resulting from this ruling must be considered harmless error if Smith's confession was properly admitted into evidence.

We begin our discussion by noting that this appeal turns on the interpretation of two constitutional provisions: the right to silence (U.S. Const., amend. V), and the right to counsel (U.S. Const., amend. VI) (both made applicable to the State by the fourteenth amendment). (*Malloy v. Hogan* (1964), 378 U.S. 1, 12 L. Ed. 2d 653, 84 S. Ct. 1489;, *Gideon v. Wainwright* (1963), 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792.) Such guarantees occasionally hamper the already difficult task of law enforcement, but they are essential elements of a free society. (See Traynor, *The Devils of Due Process in Criminal Detection, Detention & Trial* 33 U. Chi. L. Rev. 657 (1966).) Much of the world lives in an environment where the star chamber and secret police are king, and an arrested individual has virtually no protection

against the sophisticated apparatus of government.

The rights of the accused were specifically guaranteed in *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. The court established specific criteria to assure that the constitutional rights of a suspect were not violated by interrogating officers. *Miranda's* offspring have applied these criteria to a variety of situations. In *Michigan v. Mosley* (1975), 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321, the court ruled that police may resume questioning a suspect who has invoked his right to remain silent if the right to cut off the interrogation has been scrupulously honored. In *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880, the United States Supreme Court held that a suspect's confession was inadmissible because he was interrogated after his request for counsel had been ignored. *Edwards* held that reinterrogation of a suspect was proper only if the suspect initiated the reinterrogation. Although the court had declined to expand the protection afforded by *Miranda* and *Edwards* (*Oregon v. Bradshaw* (1983), 462 U.S. 1039, 77 L. Ed. 2d 405, 103 S. Ct. 2830; *Solem v. Stumes* (1984), 465 U.S. ____, 79 L. Ed. 2d 579, 104 S. Ct. 1338), it is clear that a suspect's statement is inadmissible if the statement was taken after a request for counsel was not honored by the interrogators.

This principle is not easily applied to situations where the accused makes a somewhat equivocal request for the assistance of counsel during interrogation. In the case at bar, Smith was asked if he wanted an attorney, and he replied, "Uh, yeah, I'd like to do that." Smith later stated, "Yeah and no, uh, I don't know what's what really," and finally stated: "All right. I'll talk to you then." The State argues that Smith's statement was not sufficiently definite to invoke the protections of *Miranda*. Our research has detected two schools of thought concerning the equivocal request for counsel.

.

The first position holds that any mention of an attorney, no matter how ambiguous, triggers the protections of *Miranda* and prevents police from asking questions until counsel is provided. (See *People v. Superior Court* (1975), 15 Cal. 3d 729, 542 P.2d 1390, 125 Cal. Rptr. 798; *Singleton v. State* (Fla. App. 1977), 344 So. 2d 911.) This expansive interpretation of *Miranda* was properly rejected by this court in *People v. Krueger* (1980), 82 Ill. 2d 305. In *Krueger*, this court ruled that the accused's statement of "maybe I need an attorney" did not constitute an effective request for assistance of counsel. The court noted:

> "We do not believe, however, that the Supreme Court intended by this language that every reference to an attorney, no matter how vague, indecisive or ambiguous, should constitute an invocation of the right to counsel. ***
>
> *** We hold that the officers did not violate defendant's *Miranda* rights, for, in this instance, a more positive indication or manifestation of a desire for an attorney was required than was made here." 82 Ill. 2d 305, 311-12.

In the case at bar, we agree with the reasoning of the appellate court. We believe that Smith's statements, considered in total, were ambiguous, and did not effectively invoke his right to counsel.

A second approach is grounded in the *Edwards* decision, where the court noted: "[I]t is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has *clearly asserted* his right to counsel." (Emphasis added.) (*Edwards v. Arizona* (1981), 451 U.S. 477, 485, 68 L. Ed. 2d 378, 387, 101 S. Ct. 1880, 1885; (see also *State v. Moulds* (Idaho 1983), 673 P.2d 1074.) We believe that Steven Smith did not *clearly assert* his right to counsel. We have reviewed Illinois cases dealing with this issue (*People v. Kendricks* (1984), 121 Ill. App. 3d 442; *People v.*

*Hammock* (1984), 121 Ill. App. 3d 874; *People v. Martin* (1984), 121 Ill. App. 3d 196) and find the invocation of a suspect's *Miranda* rights turn on the unique facts of each case. We believe that Smith's remarks did not trigger his right to counsel, and that the trial court did not err when it allowed his statement to be admitted into evidence.

Finally, defendant argues that the pretrial statements of Williams and Logan were improperly used as substantive evidence, rather than for impeachment purposes. In Illinois, it is well settled that prior inconsistent statements are only admissible for the limited purpose of impeachment. (*People v. Bailey* (1975), 60 Ill. 2d 37, 42-43.) In the case at bar, the defendant argues that the State's Attorney utilized the pretrial statements of Williams and Logan in violation of *Bailey.* We need not consider the merits of this argument, because we agree with the majority opinion of the appellate court that the error, if any, must be considered harmless. Two of the appellate court judges reached this conclusion, and the third justice dissented on this issue. We believe that the error, if any, was harmless, because we have determined that the defendant's confession was properly admitted into evidence, and this evidence was surely sufficient to convict him.

We therefore conclude that the trial court did not err when it allowed Smith's confession to be admitted into evidence. We now affirm the judgment of the appellate court.

*Judgment affirmed.*

JUSTICE SIMON, dissenting:

Because I find the defendant's statement indicating a desire to speak through counsel to be unambiguous and at the same time find no evidence of a voluntary renunciation of his right to do so, I would remand the cause for a new trial.

The Supreme Court has emphasized that when a suspect in custody invokes his fifth amendment right to coun-

sel and does not knowingly and voluntarily initiate communication at a later time, the police are not permitted to continue to interrogate him until counsel is provided. (*Oregon v. Bradshaw* (1983), 462 U.S. 1039, 77 L. Ed. 2d 405, 103 S. Ct. 2830; *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880; see *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) The majority's reliance on "Smith's statements, considered in total" (102 Ill. 2d at 373), confuses the two distinct questions that must be asked: whether the defendant asserted his right to counsel in the first place and whether, assuming that he did so, he later validly waived that right.

The statements which the majority claims rendered the request for counsel ambiguous were not part of the request and did not precede it but came later, following continued recitation of the *Miranda* warnings and a paraphrasing of the meaning of those warnings by the interrogator. As the *Edwards* and *Bradshaw* opinions illustrate, statements made by a defendant after he invokes his right to counsel are relevant in determining whether he waived the right following the invocation. However, they are valueless in deciding whether an earlier statement made by the defendant amounts to an assertion of the right to counsel. A statement either is such an assertion or it is not, and in the event that it is, the interrogating officer must react immediately to it, either by ceasing all questioning (see, *e.g.*, *Miranda v. Arizona* (1966), 384 U.S. 436, 444-45, 16 L. Ed. 2d 694, 707, 86 S. Ct. 1602, 1612; *People v. Superior Court* (1975), 15 Cal. 3d 729, 736, 542 P.2d 1390, 1394, 125 Cal. Rptr. 798, 802, *cert. denied* (1976), 429 U.S. 816, 50 L. Ed. 2d 76, 97 S. Ct. 58; *Singleton v. State* (Fla. App. 1977), 344 So. 2d 911, 912-13; *State v. Nash* (1979), 119 N.H. 728, 731, 407 A.2d 365, 367) or by limiting further questioning strictly to an attempt to clarify any *bona fide* doubt the officer may still have as to whether the defendant desires counsel (*State v. Moulds* (1983), 105 Idaho 880,

889, 673 P.2d 1074, 1083; see *People v. Krueger* (1980), 82 Ill. 2d 305, 311, *cert. denied* (1981), 451 U.S. 1019, 69 L. Ed. 2d 390, 101 S. Ct. 3009). No authority, and no logic, permits the interrogator to proceed with his *Miranda* warnings and his questioning, on his own terms and as if the defendant had requested nothing, in the hope that the defendant might be induced to say something casting retrospective doubt on his initial statement that he wished to speak through an attorney or not at all. That, however, is what the majority opinion permits the State to do.

The focus of a reviewing court should be on whether the defendant's alleged assertion of his right to counsel, standing alone or in conjunction with his *earlier* statements or actions insofar as they shed light on his desires, were sufficient to be understood as such an invocation by a reasonable man in the interrogating officer's position. The Supreme Court in *Miranda* said that if a suspect "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no [further] questioning." (384 U.S. 436, 444-45, 16 L. Ed. 2d 694, 707, 86 S. Ct. 1602, 1612.) Although many jurisdictions have interpreted this to mean that any indication by a defendant that he might wish to consult an attorney is sufficient to trigger the right to counsel (see, *e.g., People v. Superior Court* (1975), 15 Cal. 3d 729, 735-36, 542 P.2d 1390, 1394-95, 125 Cal. Rptr. 798, 802-03, *cert. denied* (1976), 429 U.S. 816, 50 L. Ed. 2d 76, 97 S. Ct. 58; *Singleton v. State* (Fla. App. 1977), 344 So. 2d 911, 912; *State v. Nash* (1979), 119 N.H. 728, 731, 407 A.2d 365, 367; *Ochoa v. State* (Tex. Crim. App. 1978), 573 S.W.2d 796, 800), this court has required, as the majority has noted, that a statement invoking the right be at least sufficiently free of indecision or double meaning to reasonably inform the authorities that he wishes to speak to counsel (see *People v. Krueger* (1980), 82 Ill. 2d 305, 311, *cert. denied* (1981), 451 U.S. 1019, 69 L. Ed. 2d 390, 101

S. Ct. 3009). The *Krueger* opinion stressed, however, that "assertion of the right to counsel need not be explicit, unequivocal, or made with unmistakable clarity." 82 Ill. 2d 305, 311.

The facts presented by *Krueger* are distinguishable, for with the possible exception of the word "uh" the defendant's statement in this case was neither indecisive nor ambiguous: "Uh, yeah, I'd like to do that." The statement came in answer to the warning that Smith had the right to have an attorney present while being questioned, and Smith had volunteered nothing previously which might have cast doubt on his response that he wished "to do that" rather than face the interrogator on his own. His only previous statement to the officer which is of any significance in this regard is an assertion that "she" warned him that the police would "railroad" him and advised him to get a lawyer before submitting to interrogation. I fail to understand how the officer could have mistaken the defendant's meaning, and no justification is given or is apparent for his proceeding through to the end of the *Miranda* warnings and in the course of doing so misrepresenting to Smith the meaning of those warnings by the following admonition: "You either have to talk to me this time without a lawyer being present and if you do agree to talk with me without a lawyer being present you can stop at any time you want to." This communication, even if inadvertent, clearly imparted to the defendant the warning that he had to talk to the interrogator and was seriously misleading.

This court has noted that, "[i]n the intimidating atmosphere of an interrogation room, many otherwise hardy individuals, except those with exposure to and experience with the procedure, may succumb, even after assertions of their right to remain silent and right to have counsel, to the implication that 'silence in the face of accusation is itself damning.' " (*People v. Medina* (1978), 71 Ill. 2d 254,

260.) In this regard, I find it particularly significant that Smith, who was apparently in police custody for the first time in his life and admitted that he did not "know what's what," agreed to talk to the police only after he was told, ostensibly by way of explaining the *Miranda* warnings, that he had no other choice. *Miranda* warnings are designed to assist defendants in understanding and asserting their fifth amendment rights, not to provide another source of pressure on them to surrender those rights. Smith was entitled to receive his *Miranda* warnings without having them turn into an endurance contest at his expense (*People v. Hammock* (1984), 121 Ill. App. 3d 874, 879-80) or a means of eliciting a confession from him against his will. When he indicated his desire to have counsel he should have been taken at his word, and further representations or warnings to him or discussion with him should have ceased.

GOLDENHERSH and MORAN, JJ., join in this dissent.