Strafford
No. 82-438

THE STATE OF NEW HAMPSHIRE

v.

ROBERT M. BROWN

August 9, 1984

*Gregory H. Smith,* attorney general (*Gregory W. Swope,* assistant attorney general, on the brief and orally), for the State.

*James E. Duggan,* appellate defender, of Concord, by brief and orally, for the defendant.

BATCHELDER, J.   On June 3, 1982, the defendant was convicted in Superior Court (*Temple,* J.) on two indictments charging aggravated felonious sexual assault, RSA 632-A:2 (Supp. 1983). He appeals his convictions, alleging that the superior court erred in denying certain motions filed by him prior to trial. We affirm.

## I. *Pre-Indictment Delay*

On April 8, 1982, the defendant moved to dismiss the indictments based on the failure of the State to present an indictment within sixty days of his arrest as required by *State v. Hastings,* 120 N.H. 454, 455–56, 417 A.2d 7, 8 (1980). After a hearing, the Superior Court (*Wyman,* J.) denied the motion. On May 17, 1982, the defendant renewed his motion. Following a second hearing, the Superior Court (*Temple,* J.) again denied the motion.

At the hearings, the following facts were established. On March 5, 1981, the defendant was arrested in Massachusetts on a New Hampshire warrant. The following day, he escaped from custody. He was arrested in Florida on June 2, 1981, for parole violation in Massachusetts, and was returned to Massachusetts authorities. On July 7, 1981, approximately 124 days after his initial arrest, the defendant was indicted in New Hampshire.

In *Hastings,* this court held that the State must present an indictment within sixty days of arrest or show that any delay beyond sixty days was not unreasonable. *Id.* At the hearings, the State failed to offer any explanation for the delay; in fact, the county attorney stated that he did not know why the indictments were not brought earlier. The State did argue, however, that the sixty-day period should not include those days in which the defendant was a fugitive from justice. We agree.

The sixty-day *Hastings* rule was established by this court pursuant to its rule-making power. N.H. CONST. pt. II, art. 73-A. The court reasoned that if the State had probable cause for an arrest, then no reason existed to delay the presentment of an indictment. *Id.* at 445, 417 A.2d at 8. Such an action taken within sixty days of arrest could lessen the consequences of arrest. *State v. Preston,* 124 N.H. 118, 120, 467 A.2d 243, 245 (1983).

> "'Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.'"

*Id.* (quoting *United States v. Marion,* 404 U.S. 307, 320 (1971)).

■ The consequences of an arrest may attach whether the accused is in jail, on bail or a fugitive from justice. If the accused is a fugitive, however, the State cannot alleviate these conditions by bringing an indictment. It is only when the accused subjects himself or herself to the jurisdiction of the court that the court will consider the policy behind the *Hastings* rule. Therefore, we hold that the time during which an accused is a fugitive from justice is not counted for the purpose of the *Hastings* rule. Thus, in this case, the defendant was indicted thirty-six days after his initial arrest, and the requirements of the *Hastings* rule were satisfied.

II. *Interstate Agreement on Detainers*

The defendant moved to dismiss the indictments on the ground that he was not brought to trial within 180 days of his request for a trial as required by RSA 606-A:1, art. III. The Superior Court (*Wyman,* J.) denied the motion on April 8, 1982.

RSA 606-A:1 provides:

> "Whenever a person has entered upon a term of imprisonment in a ... party state, and ... there is pending in any other party state any untried indictment ... he shall be brought to trial within one hundred eighty days after ... his request

for a final disposition to be made of the indictment . . .; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

RSA 606-A:1, art. III(a).

"[I]n the event that an action of the indictment . . . is not brought to trial within the period provided in Article III . . ., the appropriate court . . . shall enter an order dismissing the same with prejudice . . . ."

RSA 606-A:1, art. V(c).

On August 13, 1981, the defendant, while incarcerated in Massachusetts, requested disposition of his New Hampshire indictments. His trial did not commence until May 24, 1982—approximately 283 days later. Thus, the indictments against the defendant must be dismissed with prejudice unless the delay past 180 days was created by necessary or reasonable continuances granted for good cause. RSA 606-A:1, art. III(a) and art. V(c).

The defendant's trial, originally scheduled for September 28, 1981, was rescheduled for December 1, 1981, because counsel had not been appointed. On November 20, 1981, the defendant requested a continuance, representing to the court that he would be unable to defend himself adequately against the charges if a trial was held on December 1. The defendant specifically waived his right to a speedy trial. The court granted the motion, and the trial was rescheduled for January 11, 1982.

On January 6, 1982, the defendant again moved for a continuance on the ground that he was unable to defend himself adequately due to the attorney-visitation facilities at the prison, the delay in the victim's deposition and the inability of the defendant to have a notary witness his motion to suppress. The continuance was granted by *Temple*, J., and the trial was rescheduled for February 8, 1982.

On February 4, 1982, the defendant again moved for a continuance on the ground that he and his attorney had not been able to consult on a frequent basis or in privacy because of the defendant's incarceration in Massachusetts. A continuance was granted by *Wyman*, J., and the trial was rescheduled for April 12, 1982.

On April 12, 1982, the defendant moved to dismiss the indictments based on the inability of the State to produce the van in which the alleged rape occurred. The Superior Court (*Wyman*, J.) denied the motion, but continued the trial indefinitely until the State could locate and produce the van. The case ultimately went to trial on May 24, 1982.

■ The interstate agreement on detainers, RSA 606-A:1, expressly allows for reasonable and necessary continuances in order to prevent either the State or the defendant from sacrificing adequate trial preparation. *Simakis v. Dist. Ct.*, 194 Colo. 436, 440, 577 P.2d 3, 5 (1978). In this case, the three continuances requested by the defendant were necessary to allow the defendant time for adequate trial preparation. The continuances were, therefore, for good cause and were reasonable in duration. Thus the delay occasioned by them is not to be included in the 180-day statutory period. *See, e.g., Simakis v. Dist. Ct. supra; Dennett v. State,* 19 Md. App. 376, 384, 311 A.2d 437, 442 (1973); *People v. Paulus,* 115 Mich. App. 183, 188–89, 320 N.W.2d 337, 340 (1982); *Commonwealth v. Scott,* 219 Pa. Super. 470, 474, 281 A.2d 754, 756 (1971).

The defendant argues that although he requested these continuances, the circumstances which necessitated his requests were created by the State; specifically, the failure of the State to transfer the defendant to New Hampshire until February 2, 1982. The delay, he contends, should be attributed to the State and, therefore, not excluded from the 180-day period.

■ We disagree. RSA 606-A:1 does not impose on the State the duty to ensure that the defendant is prepared for trial within the 180-day period. If the defendant has been denied a fair trial or due process of law, the remedy is a constitutional challenge. U.S. CONST. amend. V.; N.H. CONST. pt. I, art. 15.

■ The three continuances requested by the defendant must be excluded from the 180-day period. Thus, the defendant was brought to trial approximately 152 days after his request. The statutory provisions of RSA 606-A:1, art. III have not, therefore, been violated.

III. *RSA 595-A:6 (Supp. 1983)*

The defendant filed several motions to dismiss the indictments on the ground that the State, contrary to RSA 595-A:6 (Supp. 1983), failed to retain custody of the van in which the alleged rape occurred. Each time, the superior court denied the motion.

RSA 595-A:6 (Supp. 1983) sets out the procedure for custody and disposition of items lawfully seized by a police officer.

> "[H]e shall seize and safely keep them under the direction of the court or justice so long as necessary to permit them to be produced or used as evidence in any trial. Upon application by a prosecutor, defendant, or civil claimants, the court, prior to trial or upon an appeal after trial, may, upon notice to a defendant and hearing, order returned to the rightful owners any . . . property of evidential value . . . ."

In this case, the Massachusetts authorities impounded the van on March 5, 1981, and at some time thereafter transferred the van to the Dover Police Department. In January 1982, the Dover police contacted the county attorney, informing him that the lienholder wanted the van. The county attorney authorized the release of the van, not realizing that it was the van involved in this case.

On April 12, 1982, the defendant moved to dismiss the indictments on the ground that the absence of the van violated his rights to due process and to confront witnesses against him. The court ordered the State to locate and produce the van, which the State did. Because the van had been radically altered, it was not admitted into evidence at trial.

The van clearly falls within the statutory language of RSA 595-A:6 (Supp. 1983). Although the State argues that it never intended to introduce the van into evidence, the van clearly was "property of evidential value." Thus we are faced with the question of the proper remedy for violation of RSA 595-A:6 (Supp. 1983).

We have previously held that technical violations of RSA chapter 595-A do not require suppression of the items seized. *See* *State v. Sands*, 123 N.H. 570, 606, 467 A.2d 202, 225 (1983); *State v. Saide*, 114 N.H. 735, 737–38, 329 A.2d 148, 149 (1974). However, in this case we are not asked if more than a technical violation of RSA 595-A:6 (Supp. 1983) requires suppression, which would avail the defendant nothing, but rather whether such a violation requires dismissal of the indictments.

■■ The legislature has not provided any sanctions for violations of RSA 595-A:6 (Supp. 1983) as it has with respect to violations of other statutory requirements. For example, failure to comply with the requirements of RSA 265:85, :87 renders the results of blood alcohol tests inadmissible. We cannot say that the legislature intended the more drastic sanction of dismissal without so providing. Additionally, RSA 595-A:6 (Supp. 1983) focuses on the owner of the items seized and provides procedures by which he or she may recover possession of the items. A violation may give rise to civil liability but not criminal sanctions.

IV. *Prior Convictions*

On April 24, 1982, the defendant moved *in limine* to prevent the State from introducing any evidence of his prior convictions. Defense counsel represented to the court that the defendant would take the stand and testify that he escaped after his arrest out of fear of the judicial system which had incarcerated him previously. Such testimony would, presumably, rebut the inference that the defendant escaped because he was guilty. The defendant, however, wanted

to preclude the State from introducing evidence of his prior convictions on cross-examination.

The Superior Court (*Temple*, J.) concluded that if the defendant tried to make the jury believe "that he was unjustly accused earlier, and the system took advantage of him," then the State would be allowed to show the prior convictions. We hold that the defendant would have opened up this otherwise inadmissible evidence if he had testified that previously he had been unjustly treated by the judicial system. *See State v. Perron*, 122 N.H. 941, 949, 454 A.2d 422, 426 (1982); *State v. Butler*, 117 N.H. 888, 891–92, 379 A.2d 827, 829–30 (1977); *see also People v. Loden*, 31 Ill. App. 3d 612, 616, 334 N.E.2d 337, 340–41 (1975); *Drollinger v. State*, 409 N.E.2d 1084, 1087 (Ind. 1980); *Gilliam v. State,* 383 N.E.2d 297, 301 (Ind. 1978). The inference that the defendant had been wrongly accused, convicted or incarcerated in the past, and the inability of the State to introduce evidence establishing the validity of those actions, would "put the prosecution in an impossible position." *State v. Butler supra; see also Gilliam v. State supra* (evidence relied on to open up must leave trier of fact with a false or misleading impression). Thus, we cannot say that the trial court's tentative ruling was an abuse of discretion.

*Affirmed.*

SOUTER, J., did not sit; the others concurred.