# State of Vermont v. Delore Trombley

[518 A.2d 20]

No. 83-621

Present: Allen, C.J., Hill, Peck, Gibson and Hayes, JJ.

Opinion Filed September 26, 1986

*Stephen J. Craddock*, Rutland County Deputy State's Attorney, Rutland, for Plaintiff-Appellee.

*Matthew Harnett* and *Phillip J. Cykon*, Rutland County Public Defenders, and *John C. Holler*, Law Clerk (On the Brief), Rutland, for Defendant-Appellant.

**Allen, C.J.** The defendant appeals his conviction of driving while under the influence of intoxicating liquor. 23 V.S.A. § 1201(a)(2). The judgment must be reversed because his conviction was based upon inculpatory statements obtained in violation of the per se rule announced in *Edwards* v. *Arizona,* 451 U.S. 477, 484-85 (1981).

## I.

In the early evening of July 23, 1983, the defendant was stopped by two Rutland County deputy sheriffs after they observed his pick-up truck being driven in an erratic manner. Upon stopping him, the officers examined his demeanor and physical condition, and then administered a field sobriety test. The defendant was unable to perform the dexterity tests, and was charged with violating 23 V.S.A. § 1201(a)(2).

The officer in charge determined that "[he] was going to take [the defendant] into custody and do a D.U.I. processing," and gave the defendant a verbal *Miranda* warning. The precise language of this warning does not appear in the record, but it is uncontroverted that in response to the warning the defendant indicated that he wished to consult with his attorney. The defendant was taken to a truck stop phone booth where an an attempt was made to contact the defendant's attorney. This attorney could not be reached, and the defendant spoke instead with the public defender.

Following his telephone conversation with the public defender, one of the officers asked the defendant, "What were you advised?" The defendant replied that he had been advised not to answer any questions but to take the breath test. The officers responded to this statement by rereading the *Miranda* warning from a standard form used for processing persons believed to be operating under the influence, as follows:

*Before we go any further, I want to explain these rights to you.*

— You may remain silent.
— Anything you say can be used against you in court.
— You may refuse to answer any questions asked of you at any time.
— If you cannot afford an attorney and want one, you can contact a Public Defender or one will be contacted for you, at the State's expense, before questioning. You have the right to have your attorney present during questioning.

Do you understand each of these rights? _X_ Yes or ___ No

Do you want a lawyer? _X_ Yes ___ No

— If yes, name of lawyer  (noted)  Time Contacted (noted)

With these rights in mind, are you willing to talk to me now?  X  Yes ____ No.

These statements and questions were read "verbatim" from the form, and the officer noted the defendant's responses to each of the questions as indicated. After checking "yes" after the question, "Do you want a lawyer?" the officer wrote in the name of the defendant's attorney they had been unable to contact, and the name of the public defender with whom the defendant had spoken. The officer noted the time of the conversation with the public defender, thereby indicating that this conversation was the one held in response to the defendant's earlier request to speak with an attorney, rather than a new contact made in response to the question posed by the officer as he read from the written processing form.

The defendant's affirmative response to the final question was noted, and the defendant signed the form. Based on his last response, the officer went through the rest of the form with the defendant, asking him a series of questions about his alcohol consumption during the day, as well as a number of questions about his medical history and use of prescription and nonprescription drugs. The defendant's answers included a number of inculpatory statements about his consumption of alcohol.

The officer then began the procedure for obtaining a breath sample. In the course of this procedure, the defendant was again asked whether he wished to consult a lawyer. The defendant's response was in the affirmative, and again the officer recorded the earlier contact with the public defender. Finally the defendant was asked if he would give a breath sample. Though he had been advised to submit to the test, the defendant refused. He was then issued a citation for driving under the influence, and released.

Before trial, the defendant moved to suppress the inculpatory statements made in response to the questions that had been read from the standard D.U.I. form. The defendant also made an oral motion in limine, requesting that the court prevent any mention at trial of his refusal to take the breath test. Both motions were denied. The inculpatory statements and the fact of his refusal to take the breath test were introduced as evidence at trial, and the defendant was convicted of violating 23 V.S.A. § 1201(a)(2). On

appeal, the defendant claims that the trial court erred in refusing to suppress the inculpatory statements, and in not preventing the prosecutor from commenting on the defendant's refusal to take the breath test.

## II.

In *Miranda* v. *Arizona,* 384 U.S. 436, 479 (1966), the United States Supreme Court declared that the series of procedural safeguards now known as the *Miranda* warning are necessary to assure that a suspect's constitutional right to remain silent is "scrupulously honored" by law enforcement officers. Indeed, *Miranda* and its progeny have established a " 'protective umbrella' " over that right, *Solem* v. *Stumes,* 465 U.S. 638, 644 n.4 (1984) (quoting *Michigan* v. *Payne,* 412 U.S. 47, 54 (1973)), which serves as a "prophylactic [rule] . . . designed to preserve the integrity of a phase of the criminal process." *Michigan* v. *Payne, supra,* 412 U.S. at 53.

A crucial component of the protective umbrella is the defendant's right to consult counsel before deciding whether to waive or invoke his right to remain silent. Under *Miranda,* the defendant must be told that he has the right to consult counsel, and to have counsel present during questioning if he so desires. *Miranda, supra,* 384 U.S. at 470.

Out of this element of *Miranda* arose the *Edwards* rule.

[A]n accused, . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Edwards, supra,* 451 U.S. at 484-85.

Whatever the defects, if any, of this relatively rigid requirement that interrogation must cease upon the accused's request for an attorney, *Miranda's* holding has the virtue of informing police and prosecutors with specificity as to what they may do in conducting custodial interrogation, and of informing courts under what circumstances statements obtained during such interrogation are not admissible.

*Fare* v. *Michael C.,* 442 U.S. 707, 718 (1979).

In this case, the defendant twice invoked his right to "deal with the police only through counsel," and, under *Edwards,* upon each invocation all interrogation should have ceased. The defendant first expressed his desire to consult with his attorney upon being given the oral *Miranda* warning alongside his truck. The two deputy sheriffs then properly ceased interrogation and allowed the defendant to consult with an attorney.

After defendant informed the arresting officer that he had been advised not to answer questions, the officer read a new *Miranda* warning to him from the printed form, including the following statement:

> If you cannot afford an attorney and want one, you can contact a Public Defender or one will be contacted for you, at the State's expense, before questioning. *You have the right to have your attorney present during questioning* . . . . Do you want a lawyer? (Emphasis added.)

By responding in the affirmative to this "yes" or "no" question, the defendant again invoked his right to consult counsel, and his right to have counsel present during questioning, for that was the substance of the statement read to him immediately before he was asked whether he "wanted a lawyer." Further interrogation should then have ceased.

That the defendant responded in the affirmative to the waiver provisions of the form, and then answered the questions posed by the officers is of no consequence in determining whether the defendant actually invoked his right to counsel. In *Smith* v. *Illinois,* 469 U.S. 91, 100 (1984), the Court held that "an accused's *post-request* responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself." The inquiry necessary to determine if the defendant invoked his right to counsel, thereby terminating the officer's legal ability to question him, must focus only upon the circumstances leading up to the request for counsel.

> "No authority, and no logic, permits the interrogator to proceed . . . on his own terms and as if the defendant had requested nothing, in the hope that the defendant might be induced to say something casting retrospective doubt on his initial statement that he wished to speak through an attorney or not at all."

*Id.* at 99 (quoting *People* v. *Smith,* 102 Ill. 2d 365, 376, 466 N.E.2d 236, 241 (1984) (Simon, J., dissenting)).

Under *Edwards,* the defendant's post request execution of the waiver provision and his inculpatory statements do raise the question of whether the defendant waived the right that he had invoked. The United States Supreme Court identified the test for waiver under the *Edwards* rule in *Smith* v. *Illinois, supra,* 469 U.S. at 95:

> if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, *and* (b) knowingly and intelligently waived the right he had invoked (citations omitted and emphasis added).

In *Solem* v. *Stumes, supra,* 465 U.S. at 646, the Court carefully explained that *Edwards* changed the law for determining waiver of the *Miranda* right to counsel from one of case-by-case analysis to the application of a prophylactic rule. The Court noted that the first part of the two-step analysis is the essence of the per se rule. "*Edwards* established a new test for when that waiver would be acceptable once the suspect had invoked his right to counsel: the suspect had to initiate subsequent communication." *Id.*

■ In this case, the defendant did not initiate the discussion that led to his providing the inculpatory statements used against him at trial. Those statements came only in response to the questions that were read to him from the processing form immediately after the defendant had invoked his right to have an attorney present during questioning. Under *Edwards,* therefore, the defendant's inculpatory statements were procured not as the product of a valid waiver, but through questions improperly posed after the defendant had invoked his right to have counsel present during questioning.

No attempt is here made to deprecate the individual's ability to waive his right to remain silent if he so chooses, for we do not seek to " 'imprison a man in his privileges.' " *Michigan* v. *Mosley,* 423 U.S. 96, 109 (1975) (White, J., concurring) (quoting *Adams* v. *United States ex rel. McCann,* 317 U.S. 269, 280 (1942)). Rather, as set forth in *Miranda, supra,* 384 U.S. at 469, "[o]ur aim is to assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process."

The trial court's failure to suppress the inculpatory statements obtained after the defendant invoked his right to have counsel present during questioning was reversible error. *State* v. *Badger,* 141 Vt. 430, 450, 450 A.2d 336, 348 (1982) (conviction based upon an involuntary confession must be reversed). The defendant's conviction must be vacated and the case remanded for a new trial without admission of the inculpatory statements.

## III.

The defendant also claims error in the court's denial of his motion in limine, in which he sought to prevent the State from referring to his refusal to take a breath test. On appeal, the defendant argues that he was not given a chance to consult his attorney a second time after the officer asked him to submit to a breath test. This question is addressed before remand because it will likely recur at retrial.

A person asked to take a breath test has a statutory right to consult with an attorney before deciding whether or not to take the test. 23 V.S.A. § 1202(c). In this case the defendant consulted with his attorney before he was asked to take the test, rather than after the request was made. Proper procedure was thus not strictly adhered to. However, the defendant's statement that he had been advised to take the breath test, made in response to the inquiry by the deputy sheriff, indicates that he conferred with his attorney. His statutory right was not compromised by the defect in the manner it was presented to him. The State may properly comment on his refusal to take the test.

*Reversed and remanded.*