**Carl BRADBURN, Petitioner-Appellant,**

v.

**O.L. McCOTTER, Director, Texas Department of Corrections, Respondent-Appellee.**

No. 84–1632.

United States Court of Appeals, Fifth Circuit.

Jan. 28, 1986.

As Amended on Denial of Rehearing April 28, 1986.

Douglas Mann, (Court-appointed), Corpus Christi, Tex., for petitioner-appellant.

Jim Mattox, Atty. Gen., Charles A. Palmer, Daniel Zemann, Jr., Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before GARWOOD, HIGGINBOTHAM and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

This appeal from the denial of a writ of habeas corpus poses two questions: Whether the state waived the exhaustion of state remedies defense and whether the petitioner's fifth amendment privilege against self-incrimination was violated by Dallas police so that petitioner's confession should have been suppressed. We conclude that the state waived its exhaustion defense by not raising it in the district court and accordingly deny the motion to

dismiss the appeal. We also conclude that Bradburn's fifth amendment privilege against self-incrimination was not violated and affirm the judgment of the district court.

## I.

Petitioner, Carl Bradburn, was arrested on August 14, 1979, in Tonopah, Nevada, for theft of an automobile. This arrest came to the attention of the Dallas Police Department and two Dallas policemen, officers Landers and Belvin, flew to Nevada to question Bradburn about the disappearance of a Dallas resident, Joe Harris. When the officers arrived in Tonopah they read the petitioner his *Miranda* rights and placed him under arrest. No questioning took place at this time and petitioner was transported to Las Vegas. In Las Vegas the next day, officer Landers again read Bradburn his *Miranda* rights and according to Lander's testimony, Bradburn stated that he understood his rights and wished to waive them. Landers then interviewed petitioner for about thirty minutes. During the interview, Landers testified that Bradburn told him he "wanted to wait until he got back to Dallas to get a court appointed lawyer." [1]

Landers also testified that Bradburn orally admitted he hit the victim several times and left him in Dallas where he was eventually found. Bradburn refused however to make a written statement to the officer in Nevada. When asked on cross-examination why Bradburn refused to make a written statement, Landers responded: "Well, I'm assuming that he wanted to talk to a lawyer in Dallas before giving a statement." The following day, Bradburn waived extradition and was returned to Dallas early on the morning of August 18. Officer Landers met with Bradburn in Dallas later that same day.

The police officers, without referring to the exchange they had with him in Nevada three days earlier, read the standard *Miranda* warning to Bradburn and he acknowledged that he understood his rights and wished to waive them. Bradburn then indicated a willingness to assist in finding the missing body and Officers Belvin and Parker took Bradburn to the north Dallas area to locate the body. After an unsuccessful search, Bradburn was returned to the police station where he was questioned by officer Parker. Parker testified that he again advised Bradburn of his *Miranda* rights and that Bradburn told him he understood those rights and wished to waive them. Bradburn's confession was reduced to writing on a paper that included a preprinted *Miranda* warning. The statement, including the warning, was read to Bradburn in the presence of a witness and then signed by him. Bradburn also drew a map showing where he disposed of Joe Harris' body. The police were able to recover the body with the aid of the map. Shortly thereafter, Bradburn was indicted for the murder of Joe Harris.

Bradburn filed a pretrial motion to suppress his written confession. Following a lengthy hearing, the trial court found that the confession was voluntary and denied the motion to suppress. A jury found Bradburn guilty of murder and the court sentenced him to life in prison; the conviction was affirmed by the Texas Court of Appeals. Petitioner sought no habeas relief in state court; instead, he filed this petition in U.S. district court. In response to the petition for habeas filed below, the state did not assert that the petitioner had failed to exhaust his state court remedies. The magistrate recommended and the district judge ordered that habeas relief be denied on grounds that the voluntariness of Bradburn's confession was fully and fairly

---

1. Officer Landers testified as follows:

Q. All right. Did Mr. Bradburn request a lawyer at that time when you talked to him?

A. He told me he wanted to wait until he got back to Dallas to get a court appointed lawyer.

Q. He wanted to wait to get a court appointed lawyer?

A. In Dallas, yes, sir.

Q. Did you inform him he was not entitled to a lawyer in Nevada?

A. No, sir, I didn't.

Q. He made no request for a lawyer in Nevada?

A. That's correct.

tried by the state court and was correctly decided by it. The state, in response to petitioner's argument on appeal that the confession was inadmissible because his fifth amendment rights were violated, filed a motion to dismiss the appeal for failure to exhaust state remedies.

### II.

The state argues for the first time on appeal that the petitioner failed to exhaust his state court remedies. Exhaustion is required by 28 U.S.C. § 2254(b) which provides: "An application for writ of habeas corpus in behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State...." Because the exhaustion requirement is not jurisdictional but rather premised on principles of comity, the defense, if not timely raised, may be forfeited or waived. *McGee v. Estelle*, 722 F.2d 1206 (5th Cir.1984) (en banc).

The state recognizes that the exhaustion defense must ordinarily be urged in the district court. The state, relying on *Brown v. Estelle*, 701 F.2d 494 (5th Cir. 1983), contends, however, that it has not waived its exhaustion defense because of a change in the law recently announced by us in *Richardson v. Procunier*, 762 F.2d 429 (5th Cir.1985). In *Richardson*, we held that a petitioner who failed to seek discretionary review on direct appeal by the Texas Court of Criminal Appeals did not exhaust his state remedies until he presented his claims to that court through collateral review provided by the state's habeas procedures. This case did not change the settled law and relieve the petitioner from seeking collateral review of a claim by the state court before asserting that same claim in a federal habeas proceeding. Petitioner presented to the district court below the same factual and legal issue that he presents to this court, namely, a violation of his fifth amendment right to counsel. It should have been clear to the state at that time that he had not sought habeas relief in the state courts. Because the exhaustion defense could have and should have been raised below, the motion to dismiss the appeal is denied. We proceed to a discussion of the substantive issue raised by this appeal.

### III.

Petitioner contends that his statement to police officers in Nevada that he "wanted to wait until he got back to Dallas to get a court appointed lawyer," clearly communicated his desire to have counsel present during police questioning. He argues that because he invoked his right to counsel in Nevada, the later interrogation initiated by the police in Dallas violated rights secured to him by *Edwards* and rendered the confession obtained as a result of the questioning in Dallas inadmissible.

In *Edwards*, the accused, while being questioned by police, invoked his right to counsel. The officers immediately stopped questioning the accused, but the next morning they initiated further questioning. The accused at first refused to respond to questions, but he relented and confessed to the crime under investigation after he was told that he was required to answer the officer's questions. The Court acknowledged that an accused, after being advised of his *Miranda* rights, may waive those rights and respond to interrogation. The Court held, however, that additional safeguards are necessary when the accused asks for counsel; accordingly it created the prophylactic rule that "an accused ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police." 451 U.S. at 484–85, 101 S.Ct. at 1885. This is the rule Bradburn argues the Dallas police violated when they questioned him and obtained his confession in Dallas.

*Smith v. Illinois*, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984), provides us with the analytical framework to determine whether the prophylactic *Edwards* rule is triggered: "First, courts must determine whether the accused actually invoked his right to counsel.... Second, if the accused

invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with police, and (b) knowingly and intelligently waived the right he had invoked." 469 U.S. at——, 105 S.Ct. at 493, 83 L.Ed. at 493–94. We turn first to the threshold inquiry: Did Bradburn invoke his right to counsel?

We recently had an opportunity in *United States v. Jardina*, 747 F.2d 945 (5th Cir.1984), *cert. denied* —— U.S. ——, 105 S.Ct. 1773, 84 L.Ed.2d 833 (1985), to consider whether a statement constituted a request for counsel. In *Jardina*, the investigating officer testified that after the accused was advised of his rights: "He [Jardina] stated he knew he didn't have to talk to me. And that he wasn't going to on certain matters. That he was interested in seeing what type of deal he could arrange between the government and his attorney." 747 F.2d at 948. He also testified that Jardina never sought to stop the questioning. Jardina did not request an attorney but told the police that he already had an attorney in Texas.

Jardina contended that he indecisively invoked his right to an attorney when he suggested that he wanted his lawyer to work out a deal with the government. He argued his statement was similar to the indecisive request in *United States v. Cherry*, 733 F.2d 1124 (5th Cir.1984).[1] In *Jardina* we distinguished *Cherry* and stated:

> In contrast to Cherry's statements clearly evincing equivocation about a present desire to have the advice of counsel, Jardina never asked that counsel be present at the ongoing questioning. Indeed, the words he spoke clearly indicated that he wished his attorney to work out a cooperative deal with the government in the future. Jardina stated without the slightest ambiguity that he would then and there answer some questions but not others.... Jardina's statements and ac-

tions did not invoke any *present* right to counsel.

747 F.2d at 949 (emphasis added); *see also Nash v. Estelle*, 597 F.2d 513, 518 (5th Cir.1979) (en banc), *cert. denied*, 444 U.S. 981, 100 S.Ct. 485, 6 L.Ed.2d 409.

■ Similarly, we conclude that Bradburn's statement that he "wanted to wait until he got back to Dallas to get a court appointed lawyer" did not amount to even an equivocal request for counsel in Nevada and *Edwards* presented no impediment to the Nevada interrogation. In response to this interrogation, Bradburn responded freely to police questioning in Nevada; he agreed to waive extradition; he discussed taking a polygraph test. He also admitted that he hit Harris several times and left him in an area in Dallas where his body was eventually found.

■ Three days after the Nevada conversation with Bradburn and after he was returned to Dallas, the police advised Bradburn of his *Miranda* rights and questioned him further. In response to these questions, Bradburn confessed to the murder. The state district judge found that no coercion took place during this interrogation and the record amply supports this finding.

Officer Landers, who questioned Bradburn in Dallas, "assumed" Bradburn's statement about getting a court appointed lawyer in Dallas expressed a desire for assistance of counsel before giving a statement in Dallas. Even if officer Landers' interpretation of Bradburn's statement is accepted, at most Bradburn's remark was an equivocal request for assistance of counsel during questioning in Dallas at some future date. Petitioner would have us extend *Edwards* to bar police contact with an accused who requests counsel at some future date. We decline to do so. The reasons for the restrictions placed on the police by *Miranda* and *Edwards* do not support this extension.

The Court in *Miranda* was concerned with the likelihood that a suspect under interrogation, unaware of his rights and with-

1. In *Cherry,* the accused told the police during questioning "Maybe I should talk to an attorney before I make a further statement" and later "Why should I not get an attorney?" 773 F.2d at 1130.

out the assistance of counsel, would be pressured or coerced into confessing against his will. To protect against this danger, *Miranda* stated that "a warning at the time of the interrogation is indispensible to overcome its pressures and to insure that the individual knows he is free to exercise the privilege at that point in time." 384 U.S. at 469, 86 S.Ct. at 1625. Thus, *Miranda's* primary objective was to provide the accused with a safety valve to instantly relieve the pressure of custodial police questioning until he could consult with counsel. The prophylactic bright line rule in *Edwards* was designed to simplify and strengthen the administration of the *Miranda* policy. *Edwards,* 451 U.S. at 484, 101 S.Ct. at 1884.

The decision of the district court denying habeas relief is therefore

AFFIRMED.