Hillsborough
No. 87-105

### THE STATE OF NEW HAMPSHIRE

v.

### KNUTE WILLIAM SUNDSTROM

December 12, 1988

*Stephen E. Merrill,* attorney general (*Andrew W. Serell,* assistant attorney general, on the brief and orally), for the State.

*James E. Duggan,* appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J. The defendant, Knute William Sundstrom, was convicted after a jury trial in the Superior Court (*O'Neil,* J.) of second degree murder of his wife (RSA 630:1-b). Prior to trial, he entered a plea of not guilty by reason of insanity and waived his right to a bifurcated trial under *Novosel v. Helgemoe,* 118 N.H. 115, 384 A.2d 124 (1978).

We are presented with two issues on appeal. First, the defendant argues that statements made by him to the police after booking were obtained in violation of his State and federal constitutional rights and should not have been admitted into evidence. Second, he asserts that the trial court erred in refusing to allow his counsel to make the closing argument to the jury on the issue of insanity *after* the State's closing argument. For the reasons that follow, we find no merit to the defendant's arguments and therefore affirm.

On July 28, 1985, the defendant shot and killed his wife, Margaret Jane Sundstrom. Immediately after the shooting, he called "911" emergency to report the death. A Manchester police officer, Joseph King, responded to the call. At the scene, Officer King informed Sundstrom of his constitutional rights under *Miranda v. Arizona,* 384 U.S. 436 (1966), although the defendant had indicated that he was already aware of them. The defendant stated that he understood his rights and wished to answer questions. He then briefly narrated the events leading up to the shooting, including the admission that he had killed his wife. While being driven to the Manchester police station, the defendant volunteered, without questioning, more information relating to the incident.

At the station, Officer Stanley Dziura booked the defendant for second degree murder. As part of the videotaped booking procedure, the defendant again was informed of his rights under *Miranda.* The following exchange then took place:

"Officer Dziura:  Do you want a lawyer present, yes or no?

Defendant:  I don't know.

Officer Dziura:  Well you can think about it and anytime you want one, just let us know."

After asking the defendant a number of standard booking questions, Officer Dziura advised him that he had the right to use the telephone and asked him to sign a form indicating that he understood this right. Officer Dziura explained that the defendant did not have to sign the form. In response, the defendant asked whether he could use the right at any time, to which Officer Dziura replied, "Anytime, that's correct." The defendant then consented to a breathalyzer test. This conversation immediately followed:

"Officer Dziura: Before we start, do you want to make any phone calls or do you want to do it right off the bat and call later?

Defendant: All the phone numbers are in there but there's only . . . I only have one lawyer.

Officer Dziura: Who's that?

Defendant: Gregory Michaels.

Officer Dziura: You want to call him now or later?

Defendant: Later . . .

Officer Dziura: Get this out . . . alright.

Defendant: There's no hurry.

Officer Dziura: Okay."

In the breathalyzer room, the defendant had a conversation with Sergeant Roland Boucher, in which he further discussed the shooting and his relationship with his wife. When difficulties were encountered in obtaining accurate breathalyzer test results, the defendant agreed to be taken to a local hospital for a blood alcohol test. On his return, Sergeant Boucher brought the defendant into an interview room, advised him of his *Miranda* rights, and asked him if he would consent to questioning on videotape. The defendant consented. Both Sergeant Boucher and the defendant moved to another interview room where Sergeant Boucher, on camera, informed the defendant once again of his *Miranda* rights. After executing a written waiver of his rights, the defendant revealed the details of the shooting. The defendant neither requested an attorney, nor made any further mention of contacting his attorney, after the booking procedure.

The defense filed several pretrial motions, including one to suppress all statements made to Manchester police officers and another, which is the subject of this appeal, to suppress all post-booking statements. In denying both motions, the court found that the defendant had waived his *Miranda* rights knowingly, intelligently, and voluntarily when he responded to police questioning at

the scene of the shooting, and that with respect to his post-booking statements, the defendant had waived his constitutional rights and never asserted his right to counsel during the booking process. In addition, the defendant filed a motion *in limine* requesting permission to argue to the jury last on the issue of insanity, on the ground that the defense has the burden of proof on that issue. The trial court granted this motion on the condition that the defendant choose a bifurcated trial. The court based its decision on the conclusion that, absent bifurcation, the requested order of arguments would tend to confuse the jury. The defendant elected not to request bifurcation.

The defendant first contends that his statements made during the booking process amounted to an assertion of his right to counsel, and that the subsequent videotaped confession, obtained without the presence of counsel, therefore violated his State and federal constitutional rights. Because he alleges both State and federal violations, we will look first to our own State Constitution and then, if necessary, will look to the Federal Constitution to determine whether it provides the defendant with greater protection. *State v. Ball*, 124 N.H. 226, 232, 471 A.2d 347, 351 (1983).

■■ The right to counsel is embodied in part I, article 15 of the New Hampshire Constitution. This right is a "fundamental one which transcends the enforcement of the criminal law and should be liberally observed by those who have sworn to uphold the constitution, and no effort should be made to discourage the exercise of the right by our citizens." *State v. Tapply*, 124 N.H. 318, 325, 470 A.2d 900, 904 (1983). Once an accused indicates "by any means or in any manner" that he seeks counsel, all interrogation must cease until the accused has the opportunity to confer with counsel. *Id.*; *Miranda v. Arizona*, 384 U.S. at 444–45; *State v. Nash*, 119 N.H. 728, 731, 407 A.2d 365, 367 (1979).

Relying on *State v. Tapply*, the defendant argues that his allegedly equivocal statements, "I don't know" and "Later. There's no hurry," required the officers to cease all questioning. Alternatively, he asserts that because these statements were equivocal, the police officers should have clarified their meaning before proceeding. Finally, the defendant argues that his statement about conferring with counsel "later" was a clear but limited request for counsel, and the officers were bound to honor the plain meaning of the statement.

The defendant's reliance on *Tapply* is misplaced. The law enforcement officers there, rather than eliminating any ambiguity or doubt that existed as to whether the defendant wished to assert

or waive his right to have counsel present during questioning, diverted his attention to other matters. *Tapply*, 124 N.H. at 324–25, 470 A.2d at 904. We emphasized in *Tapply* that the officers actively discouraged and thwarted the defendant from exercising his constitutional rights, knowing that he was seeking the advice of counsel. *Id.*

The case at bar emerges from an entirely different factual background. The police officers did nothing improper to elicit an incriminating statement from the defendant. Indeed, they scrupulously insured that the defendant was aware of and understood his rights under *Miranda*. He was given *Miranda* warnings at the scene, although he had stated that he already knew them. He then voluntarily waived those rights. The defendant received the *Miranda* warnings again at the police station. The police officer responded to his statement "I don't know" by stating "Well, you can think about it and anytime you want one, just let us know." Shortly afterwards, the officer reminded him that he could make a phone call at any time. After the defendant stated that he would call his attorney "later," he received two additional *Miranda* warnings and signed a waiver form before making the videotaped statement to which he now objects.

Under these factual circumstances, we conclude that the defendant did not assert his right to counsel. The statements "I don't know" and "Later. There's no hurry" indicate that the defendant was not seeking counsel at the time of his booking. Although the statement, "I don't know," might, in combination with other factors, indicate a request for counsel, those factors are not present here. *See People v. Krueger*, 82 Ill. 2d 305, 311, 412 N.E.2d 537, 540 (1980), *cert. denied*, 451 U.S. 1019 (1981) (every reference to an attorney does not constitute an invocation of the right to counsel). In this case, the law enforcement officers responded properly to the defendant's statement by explaining to him that he could request a lawyer to be present at any time. The officers further clarified the defendant's indecision by asking him who his lawyer was, and whether he wanted to call him at that time or later. The defendant's response, "Later. There's no hurry," indicates that he had decided to seek assistance at some later time.

Moreover, from these statements we cannot infer at what point in the future the defendant wished to exercise his right to counsel. Only the defendant could decide when he would invoke this right. The officers did not, as the defense asserts, fail to honor this right, nor did they discourage it. In fact, the two additional *Miranda* warnings indicate that the officers gave the defendant every

opportunity to exercise his rights, but he had not yet chosen to do so.

We reach the same conclusion under the fifth amendment of the Federal Constitution. When a defendant clearly asserts his right to counsel, *Miranda* and its progeny require that law enforcement officials cease interrogation until counsel is provided. *Miranda v. Arizona*, 384 U.S. at 473–74; *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981); *Smith v. Illinois*, 469 U.S. 91, 94–95 (1984). However, if the defendant makes an equivocal or ambiguous request for counsel, a majority of the federal circuits allow police officials to clarify the request before continuing or ceasing the interrogation. *United States v. Porter*, 776 F.2d 370 (1st Cir. 1985), *cert. denied*, 107 S. Ct. 2178 (1987); *United States v. Fouche*, 776 F.2d 1398, 1404–05 (9th Cir. 1985), *cert. denied*, 108 S. Ct. 1756 (1988). As we have stated, the law enforcement officers in this case properly responded to the defendant's arguably equivocal statement, "I don't know," making it clear that the defendant did not wish to assert his right to counsel until some later time. Furthermore, we noted that the officers did not fail to honor the defendant's right to seek counsel; they responded with deference to it.

■ We therefore hold that the defendant never effectively asserted his right to counsel under part I, article 15 of the New Hampshire Constitution or under the fifth amendment of the United States Constitution, and is not entitled to the suppression of his post-booking statements.

■ The second issue raised by the defendant is whether the trial court properly denied his motion to argue the insanity defense after the State's closing argument. We addressed this issue earlier in *State v. Baker*, 120 N.H. 773, 776–77, 424 A.2d 171, 173 (1980), where we held that absent a manifest abuse of discretion, a criminal defendant has no right to present the last closing argument, even if he bears the burden of proof with respect to the defense of insanity. There is no showing that the trial court abused its discretion in this case, and we accordingly affirm its denial of the defendant's motion.

*Affirmed.*

All concurred.