960 F.2d 143
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Knute William SUNDSTROM, Petitioner, Appellant,
v.
Ronald L. POWELL, Commissioner, NH Department of Correction,
et al., Respondents, Appellees.
 91-1766.
 United States Court of Appeals, First Circuit.
 April 23, 1992
 
 Knute William Sundstrom on brief pro se.
 John P. Arnold, Attorney General, and Ann M. Rice, Assistant Attorney General, Criminal Justice Bureau, on brief for appellees.
 Before Breyer, Chief Judge, Selya and Cyr, Circuit Judges.
 Per Curiam.
 
 
 1
 Petitioner-appellant Knute Sundstrom filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the District of New Hampshire. Sundstrom alleged that the admission at his state court trial of his videotaped confession to the murder of his wife violated his federal constitutional rights under the fifth and fourteenth amendments. The district court denied the petition and granted Sundstrom's motion for a certificate of probable cause to appeal. We affirm the ruling of the district court.
 
 I. FACTS
 
 2
 The facts of this case were undisputed in the district court (although Sundstrom has disputed certain facts for the first time on appeal, as we shall discuss below). The facts, as summarized by the district court, are as follows.
 
 
 3
 On July 28, 1985, Sundstrom shot and killed his wife, Margaret Jane Sundstrom. Immediately after the shooting, he called "911" to report the death. A Manchester police officer, Joseph King, responded to the call.
 
 
 4
 Upon arriving at the Sundstrom home, Officer King was met at the front door and allowed to enter. Upon seeing the deceased, Officer King informed Sundstrom that he would have to ask him some questions. Officer King then told Sundstrom that he was going to read him his Miranda rights. According to Officer King, Sundstrom responded that he knew his rights and did not need them read to him, but Officer King proceeded to read Sundstrom his Miranda rights. Officer King then asked Sundstrom if, understanding his rights, he wanted to answer questions. Sundstrom responded that he did. Sundstrom proceeded to narrate the events leading up to the shooting, including an admission that he had killed his wife. While being driven to the Manchester police station, Sundstrom continued to volunteer, without being questioned, more details about the incident.
 
 
 5
 Upon arriving at the Manchester police station, Officer Stanley Dziura booked Sundstrom for second-degree murder. Sundstrom was informed that the booking procedure was being videotaped by the Manchester police. Sundstrom was once again read his Miranda rights. Upon informing Sundstrom of his right to an attorney, Officer Dziura asked Sundstrom, "Do you want a lawyer present, yes or no?" Sundstrom responded, "I don't know." Officer Dziura then said, "Well, you can think about it and anytime you want one, just let us know." Officer Dziura then continued with the standard booking procedure.
 
 
 6
 Officer Dziura then advised Sundstrom that he had a right to use a telephone and asked him to sign a form indicating he understood this right. The officer explained that Sundstrom did not have to sign the form if he did not want to. Sundstrom asked if he had the right to use the phone at any time, to which the officer replied, "Anytime. That's correct."
 
 
 7
 Sundstrom was then asked, by an officer not on camera, if he had had anything to drink. Sundstrom admitted he had, and proceeded to detail the amounts. Officer Dziura then informed Sundstrom that they would like him to take a breathalyzer test and asked if he would consent to this. Sundstrom consented. The following conversation (as quoted by the district court) between Officer Dziura and Sundstrom then ensued:
 
 
 8
 Q. Before we start, do you want to make any phone calls or do you want to do it [the breath test] right off the bat and call later?
 
 
 9
 A. All the telephone numbers are in there [apparently indicating his wallet, which had just been taken from his pocket] but there's only ... I only have one lawyer.
 
 
 10
 Q. Who's that?
 
 
 11
 A. Gregory Michaels.
 
 
 12
 Q. Do you want to call him now or later?
 
 
 13
 A. Later.
 
 
 14
 Q. Get this out of ... all right.
 
 
 15
 A. There's no hurry.
 
 
 16
 Q. Okay.
 
 
 17
 [Another officer] Why don't you come with me, okay?
 
 
 18
 Sundstrom was then taken for an intoximeter test. There, he had a conversation with Sgt. Roland Boucher about the shooting and at one point said, "There's no excuse for what I did. No one should take someone else's life." After three unsuccessful attempts to take the breath test, Sundstrom was asked if he would consent to a blood test. Sundstrom agreed, and was brought to a hospital where a blood sample was taken.
 
 
 19
 Upon returning to the police station, Sgt. Boucher read Sundstrom his Miranda rights and asked Sundstrom to read the rights aloud with him. Sgt. Boucher read the rights from a standardized police form. Sundstrom was then asked if, understanding these rights, he was willing to answer questions on videotape. Sundstrom responded that he would be willing to do so.
 
 
 20
 Sundstrom was transported to a larger room with video equipment. At the beginning of the videotape, Sgt. Boucher again read Sundstrom his Miranda rights, asked Sundstrom if he understood his rights, and, understanding his rights, if he wanted to answer questions. Sundstrom again stated that he understood his rights and was willing to answer questions. Sundstrom then signed a written waiver of his rights. Sundstrom proceeded to give a detailed account of the events leading up to the shooting and the shooting itself.
 
 
 21
 Subsequently, Sundstrom was tried before a jury for second-degree murder in New Hampshire Superior Court. The videotape of Sundstrom's confession was entered into evidence at the trial. It is the admission of this videotape into evidence that Sundstrom now challenges. Following the jury trial, Sundstrom was convicted of second-degree murder and sentenced to imprisonment for a term of twenty years to life. Sundstrom appealed to the New Hampshire Supreme Court, raising, inter alia, his objections to the admission of the videotape. The New Hampshire Supreme Court affirmed his conviction. State v. Sundstrom, 131 N.H. 203, 552 A.2d 81 (1988).
 
 
 22
 In his § 2254 petition, Sundstrom alleged two alter-native grounds for habeas corpus relief. First, he argued that his response of "later" to Officer Dziura's question, "Do you want to call him [petitioner's attorney] now or later?", was an unequivocal, albeit limited, assertion of his right to an attorney. Sundstrom claims that this assertion should have precluded any further questioning by the police. Alternatively, Sundstrom claims that his response of "later" was equivocal or ambiguous, and therefore the police were required to limit further questioning to a clarification of Sundstrom's desire for counsel.
 
 II. ISSUES FIRST RAISED ON APPEAL
 
 23
 On appeal, Sundstrom filed a "designation of appellate brief" in which he requested that this court accept his § 2254 petition as his brief on appeal. This request was granted. In this "designation of appellate brief," however, Sundstrom also added four additional bases for habeas corpus relief: (1) that his physical and mental capability to sign a waiver of his constitutional rights was not established by contemporaneous, competent medical examination; (2) that the waiver he signed did not state that it was a waiver of constitutional rights, and that no one explained this to him; (3) that he could not "knowingly" sign a waiver of constitutional rights while under the influence of the physical and emotional stress caused by the crime and by the police's "relentless incommunicado interrogation;" and (4) that only part of the videotape was shown in court, whereas a showing of the complete videotape would have revealed the reason why he consented to the videotaped interview. Sundstrom did not raise any of these four points as a basis for habeas corpus relief in the district court. Accordingly, we will not consider them for the first time on appeal. Dziurgot v. Luther, 897 F.2d 1222, 1224 (1st Cir. 1990); United States v. Valencia-Copete, 792 F.2d 4, 5 (1st Cir. 1986); Tarrant v. Ponte, 751 F.2d 459, 461 n.5 (1st Cir. 1985).
 
 
 24
 III. THE AMBIGUOUS NATURE OF SUNDSTROM'S REQUEST FOR COUNSEL
 
 
 25
 We now turn to the two issues Sundstrom did raise in his § 2254 petition. In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court outlined the protections that police must accord to suspects during custodial interrogation:
 
 
 26
 Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning.
 
 
 27
 Id. at 444-45. Once a defendant has invoked his right to an attorney, all questioning must cease unless the defendant himself initiates further contact. Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). The mere fact that the defendant later responds to police questioning after being re-advised of his rights is not sufficient to infer a knowing and intelligent waiver of the right to counsel. Id. at 484.
 
 
 28
 Sundstrom contends that he clearly and unequivocally invoked his right to counsel when, in response to the question, "Do you want to call him [Sundstrom's attorney] now or later?," Sundstrom answered, "Later." Sundstrom acknowledges that this request for counsel was limited in that Sundstrom did not request counsel immediately. Sundstrom insists, however, that this limited request for counsel was nevertheless unequivocal. Thus, according to Sundstrom, all questioning by police following this exchange was improper.
 
 
 29
 We agree with the district court that Sundstrom's argument must fail because, although Sundstrom did clearly state his desire to have the benefit of counsel "later," he did not unequivocally express a present desire for counsel. In fact, Sundstrom's statement unequivocally foreswore any desire for counsel "now." It is only when a defendant expresses an unequivocal-however limited-desire for the present assistance of counsel that the protections of Miranda and Edwards come into play.
 
 
 30
 Several authorities illustrate this proposition. In Bradburn v. McCotter, 786 F.2d 627 (5th Cir.), cert. denied, 479 U.S. 847 (1986), the defendant, while being held in Nevada after his arrest, stated that he "wanted to wait until he got back to Dallas to get a court appointed lawyer." Id. at 628. The Fifth Circuit held that this was not an unequivocal request for the present assistance of counsel. The court stated that it declined to "extend Edwards to bar police contact with an accused who requests counsel at some future date." Id. at 630. The court reasoned that "[t]he reasons for the restrictions placed on the police by Miranda and Edwards do not support this extension", id., because "Miranda 's primary objective was to provide the accused with a safety valve to instantly relieve the pressure of custodial police questioning until he could consult with counsel." Id. at 631.
 
 
 31
 Similarly, in United States v. Jardina, 747 F.2d 945 (5th Cir. 1984), cert. denied, 470 U.S. 1058 (1985), the defendant, in custody in Louisiana, did not request an attorney but stated that he already had an attorney in Texas and that he wanted his attorney to work out a deal with the government. The defendant then went on to answer various questions. The court ruled that because the defendant "never asked that counsel be present at the ongoing questioning," his "statements and actions did not invoke any present right to counsel." Id. at 949. The defendant's statements were therefore admissible.
 
 
 32
 Yet again in United States v. Scarpa, 701 F.Supp. 379 (E.D.N.Y. 1988), aff'd, 897 F.2d 63 (2d Cir. 1990), the defendant stated that he didn't have a lawyer but that he was going to get a lawyer, whose name he didn't know, but who had represented another individual. The district court ruled that this was an unequivocal and unambiguous expression of a desire for counsel in the future. The Edwards rule therefore had no application because that rule required "that the defendant express a desire to deal with police only through counsel presently." Id. at 382 (emphasis in original). In support the court quoted law review commentary, which argued,
 
 
 33
 [T]he relevant mindset that satisfies the standard delineated is a present desire for counsel.... Behavior that is not likely to be an expression of a present desire, but at best evinces a wish for counsel at a future stage, should not qualify as an invocation because it fails to convey adequately, and should not be presumed to convey, present vulnerability to governmental pressure or superiority and an immediate need for aid. It is only such expressions of vulnerability and need that justify the heightening of protections that follows invocations.
 
 
 34
 Id. (quoting Tomkovicz, Standards for Invocation and Waiver of Counsel in Confession Contexts, 71 Iowa L.Rev. 975, 1013 (1986) (emphasis in original).
 
 
 35
 As we have said, the statement that Sundstrom did not want counsel "now," but wanted counsel "later," unequivocally foreswore a desire for counsel at that very instant and unequivocally expressed a desire for counsel in the future. We conclude, nevertheless, that Sundstrom did say enough to express an ambiguous present desire for counsel. The response "later" carries with it an inherent ambiguity as to precisely when Sundstrom would want the help of counsel. Did Sundstrom want counsel one minute, one hour, one day or one week "later?" Shortly after Sundstrom gave this response-even, technically, a mere wink of an eye later-Sundstrom's desire for counsel had already become ambiguous because it had already become unclear whether enough time had passed so that Sundstrom's "later" had become "now." For this reason, an expression of a desire for counsel "later" constitutes an inherently ambiguous present (or so near to the present as to make the difference meaningless) invocation of the right to counsel. Certainly by the time Sundstrom gave the videotaped confession at issue in this case, it was not clear from his prior statement whether he would want counsel then.
 
 
 36
 The cases relied on by Sundstrom are inapposite because they all involve an unequivocal, albeit limited, invocation of a present right to counsel. See Connecticut v. Barrett, 479 U.S. 523 (1987) (defendant would make oral, but not written, statements without counsel present); Smith v. Endell, 860 F.2d 1528 (9th Cir. 1988), cert. denied, 111 S.Ct. 510 (1990) (defendant said he wanted an attorney if he was a suspect in the crime); Bruni v. Lewis, 847 F.2d 561 (9th Cir. 1988), cert. denied, 488 U.S. 960 (1988), 489 U.S. 1055 (1989) (defendant agreed to answer some questions but not others); Griffin v. Lynaugh, 823 F.2d 856 (5th Cir. 1987), cert. denied, 484 U.S. 1079 (1988) (defendant said he wanted to talk to his attorney and answered questions following a telephone conversation with his attorney). In the instant case, Sundstrom did not unequivocally express a present desire for counsel at all, not even to a limited extent.
 
 
 37
 It is certainly true that "[t]here is no requirement that a suspect specify that he wants counsel at the questioning. [A suspect is] not required to make a temporal statement-to say that he wanted counsel right away-and his failure to do so does not render his invocation of his right less than immediate." Robinson v. Borg, 918 F.2d 1387, 1392 (9th Cir. 1990), cert. denied, 112 S.Ct. 198 (1991). But where a defendant, like Sundstrom, expressly declines counsel "now" and requests counsel only "later," a present desire for counsel has been only ambiguously expressed.
 
 
 38
 IV. POLICE CLARIFICATION OF SUNDSTROM'S WISHES
 
 
 39
 Where a defendant has made an equivocal or ambiguous expression of a present right to counsel, "the questioning officers must find out more specifically whether he wants a lawyer before they can proceed further with other questioning." United States v. Porter, 776 F.2d 370, 370 (1st Cir. 1985). If a police attempt to clarify the defendant's desire for counsel "reveals that the suspect wants counsel, all interrogation must stop until counsel is provided; if clarification reveals that the suspect does not want counsel, the interrogation may continue." United States v. Fouche, 776 F.2d 1398, 1405 (9th Cir. 1985).
 
 
 40
 Our inquiry here, therefore, is whether the police adequately clarified Sundstrom's ambiguous request for counsel before Sundstrom gave the videotaped confession. We hold that they did.
 
 
 41
 Following the conversation in which Sundstrom said he wanted counsel "later," Sundstrom was taken for an intoximeter test and then to the hospital for a blood test. After returning to the police station from the hospital, Sgt. Boucher read Sundstrom his Miranda rights again. Sundstrom and Sgt. Boucher read the rights aloud together. Sgt. Boucher asked Sundstrom if he would be willing to answer questions on videotape. Sundstrom said that he would. After they went to the video room, Sgt. Boucher, now being taped, again read Sundstrom his Miranda rights. Sgt. Boucher asked Sundstrom if he understood his rights and would be willing to answer questions on videotape. Sundstrom replied that he did and he would. Sundstrom signed a written waiver of his rights. It was then that Sundstrom gave the videotaped confession he now contends should have been excluded from his state court trial.
 
 
 42
 It is certainly true, as the district court acknowledged, that where a suspect has unequivocally asked for an attorney, simply re-reading the suspect his rights will not establish a waiver of those rights. Edwards, supra, 451 U.S. at 484-85. By the same token, where a suspect has expressed an equivocal or ambiguous desire for counsel, merely re-reading the suspect's Miranda rights will not necessarily constitute sufficient clarification of the desire for counsel to permit subsequent questioning without counsel.
 
 
 43
 Thus, in United States v. Porter, 764 F.2d 1 (1st Cir. 1985), as further explained by order of court denying rehearing, 776 F.2d 370 (1st Cir. 1985), this court held that, where the defendant had made a telephone call to his attorney in the presence of police, defendant had ambiguously expressed a possible desire for counsel. We further held that the fact that an interrogator subsequently asked the defendant whether he understood his rights did not adequately clarify the defendant's desire for counsel. We observed that "[m]erely asking the accused whether he understood his rights does not satisfy the duties of an interrogating officer or make any statement the accused might then make admissible. Miranda requires the interrogating officer to go further and make sure that the accused, knowing his rights, voluntarily relinquishes them." Porter, supra, 764 F.2d at 7.
 
 
 44
 On the other hand, in United States v. Fouche, 776 F.2d 1398 (9th Cir. 1985), appeal after remand, 833 F.2d 1284 (9th Cir. 1987), cert. denied, 486 U.S. 1017 (1988), the Ninth Circuit-after finding that defendant's statement that he "might want to talk to a lawyer," Fouche, supra, 833 F.2d at 1286, constituted an equivocal request for counsel-held that the police adequately clarified defendant's wishes before questioning by (1) re-reading defendant's Miranda rights; (2) having already once explained those rights in detail, asking defendant if he understood those rights and what it meant to waive them; (3) upon receiving an affirmative reply, asking defendant if he wanted to waive those rights; and (4) even after defendant indicated he would waive the right to an attorney, continuing to question defendant about that decision to be sure it was voluntary. The court in Fouche specifically distinguished Porter by noting that in Porter the interrogating officer had done only the first of the four items listed above, i.e., re-reading the suspect's Miranda rights. The Fouche court explained, "We agree that a rote repetition of the Miranda rights does not prove that a defendant understood and voluntarily waived those rights. In the present case, however, [the interrogating officer] did more than merely recite words from a card." Id. at 1288.
 
 
 45
 The Ninth Circuit reached a similar result in United States v. Nordling, 804 F.2d 1466 (9th Cir. 1986). In Nordling, the defendant's request that police contact his attorney in Washington in order to identify defendant was held to be an equivocal request for counsel. The court held that the police adequately clarified defendant's response by (1) readministering the Miranda warnings "without delay or additional questioning," id. at 1471, and (2) explaining to defendant that an unequivocal "yes or no" response was necessary to the question whether defendant wanted counsel.
 
 
 46
 Other courts have gone further than Fouche and Nordling by ruling-at least arguably in conflict with Porter-that a simple readministering of Miranda warnings was sufficient clarification. Thus, in United States v. Gonzalez, 833 F.2d 1464 (11th Cir. 1987), the accused's statement that she had tried to obtain counsel but could not afford the cost was held to be an ambiguous request for counsel. The court further ruled as follows:
 
 
 47
 The agents ... subsequently and properly gave Miranda warnings apprising [defendant] of her right to appointed counsel. Thereafter, [defendant] made no request for appointed counsel or the presence of counsel and gave her confession. Any ambiguity in [defendant's] statement about her inability to retain counsel was resolved by her failure to request counsel or the presence of counsel after receiving the Miranda warning and proceeding with her confession.
 
 
 48
 Id. at 1466.
 
 
 49
 Similarly, in Bradburn, supra, 786 F.2d 627, the Fifth Circuit held that defendant's statement in custody in Nevada that he "wanted to wait until he got back to Dallas to get a court appointed lawyer," id. at 628, constituted at most "an equivocal request for assistance of counsel during questioning in Dallas at some future date." Id. at 630. The court then implicitly ruled-but without discussion of the point-that the police's advising defendant of his Miranda rights after he was returned to Dallas adequately clarified defendant's wishes.
 
 
 50
 In Towne v. Dugger, 899 F.2d 1104 (11th Cir.), cert. denied, 111 S.Ct. 536 (1990), the Eleventh Circuit took the opportunity to clarify its reasoning in Gonzalez, supra, 833 F.2d 1464. In Towne the defendant asked the interrogating police officer what the police officer thought about whether defendant should get a lawyer. The officer responded by making accusatory statements regarding the criminal offenses under investigation. Subsequently, another police officer arrived, reviewed the Miranda warnings one by one with defendant, and had defendant indicate in writing that he understood each one. Defendant then confessed. The court held that the review of the Miranda warnings-found adequate to clarify defendant's desire for an attorney in Gonzalez-was not adequate under the different circumstances in Towne.
 
 
 51
 The court noted that in Gonzalez defendant had told the police it was too expensive to have an attorney accompany her. Thus, the statement in the Miranda warnings, "if you would like to have an attorney present during questioning and cannot afford one, one will be appointed for you," served to clarify defendant's expressed misunderstanding. Towne, supra, 899 F.2d at 1110. In Towne, by contrast, the court explained, the police did nothing to clarify whether defendant wanted an attorney present or to explain that they could not give legal advice and it was up to defendant to decide. Instead, one police officer made accusatory statements. Under these circumstances, the court concluded, merely repeating the Miranda warnings, even with some care, was inadequate. Id. at 1110-11.
 
 
 52
 In light of all the above authorities, we conclude that the police did enough in this case to clarify Sundstrom's desire for counsel by the time he made his videotaped confession. The police did more than merely recite, as in Porter, Sundstrom's Miranda rights by rote before questioning him. Instead, they read Sundstrom his Miranda rights twice in succession. As each particular right was read to Sundstrom, the police paused to ask Sundstrom if he understood that right. The first of the two times Sundstrom was read his rights, Sgt. Boucher had Sundstrom read his rights aloud. The second time, Sundstrom signed a written waiver of his rights. These procedures indicate that the police took pains to ensure that Sundstrom did not in fact desire counsel at that time.
 
 
 53
 We agree, moreover, that "a review of the whole event discloses that the interviewing agent has [not] impinged on the exercise of the suspect's continuing option to cut off the interview." Nash v. Estelle, 597 F.2d 513, 518 (5th Cir.), cert. denied, 444 U.S. 981 (1979). The police officers in this case did not confront Sundstrom with accusatory statements, as in Towne, supra, 899 F.2d 1104, or engage in any other behavior inconsistent with an appropriate regard for Sundstrom's constitutional rights. Although only Sundstrom's videotaped confession is at issue here, Sundstrom on several other occasions-at his residence, on the way to the police station, and during his blood test-volunteered incriminatory statements to the police after the initial reading of his Miranda rights. Sundstrom himself called the police to notify them of the killing, and then allowed Officer King to enter his home. There is nothing in the circumstances of this case to raise any suspicion of the kind of police intimidation or coercion-even in their subtlest forms-against which Miranda and Edwards were designed to protect.
 
 
 54
 We do acknowledge that it would have been better had the police specifically reminded Sundstrom, before he gave his videotaped confession, of his earlier expressed desire for counsel "later," and asked him whether that meant he wanted counsel at that time. Also, the police did not ask him directly if he wanted counsel at that time and insist on a "yes or no" answer, as in Nordling, or specifically question Sundstrom about his decision to waive his right to counsel, as in Fouche. Because of the manifest care the police did take, however, we think the circumstances of this case place it much closer to Fouche than to our own precedent in Porter.
 
 
 55
 We add that the nature of the ambiguity here bolsters our conclusion that the police's careful readministering of Miranda rights on two occasions constituted adequate clarification. Sundstrom unequivocally expressed a desire for counsel in the future. His request was ambiguous only as to time, in that precisely when he wanted counsel remained unspecified. Such an unequivocal but ambiguous response suggests at least the possibility that the defendant has some idea when in the future he wants counsel, but has not communicated that idea to his interrogators. In that situation, a careful and thorough repetition of Miranda rights, plus the signing of a written waiver, can reasonably be expected to remind the defendant of his right to counsel and of his previously expressed desire for counsel at a future time. In this case the police gave Sundstrom ample opportunity to specify that the time for counsel was now.
 
 V. FACTUAL DISPUTES
 
 56
 We note, finally, Sundstrom's conclusory assertion in his "designation of appellate brief" that the district court's opinion somehow incorrectly described the statements made by Officer King when Officer King arrested Sundstrom at Sundstrom's home. The district court adopted respondents' summary of these facts, to which Sundstrom made no objection in the district court. In any event, it is undisputed that the challenged statements of Officer King all occurred before Sundstrom's mention of counsel and the police response thereto. Our holding, therefore, would be unaffected by any factual dispute over Officer King's statements.
 
 
 57
 The judgment of the district court is affirmed.